LEE E. DALY AND ROSEMARIE H. DALY, PETITIONERS v.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9834–77.     Filed April 24, 1979.

*Daniel V. S. McEvily,* for the petitioners.
*Marguerite F. Gramza,* for the respondent.

RAUM, *Judge:* The Commissioner determined a deficiency in Federal income tax for 1975 against petitioner in the amount of $2,027. After concessions, the principal issue remaining for our decision is whether petitioners are entitled to a deduction under section 162(a)(2), I.R.C. 1954, for certain transportation, meals, and lodging expenses incurred in traveling from a personal residence in McLean, Va., to the Philadelphia area.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.

Petitioners Lee E. and Rosemarie H. Daly, husband and wife, resided in McLean, Va., at the time their petition in this case was filed. Their 1975 joint Federal income tax return was filed with the District Director of Internal Revenue, Richmond, Va. The deductions here at issue relate to expenses incurred by petitioner Lee E. Daly. Accordingly, he will sometimes hereinafter be referred to as petitioner.

From 1965 to the present, petitioner Lee E. Daly has been

employed as a district sales manager of the Myrtle Desk Co. of High Point, N.C. In this capacity, petitioner sells and promotes the Myrtle Desk Co.'s products (office furniture) to authorized dealers, universities, colleges, schools, hospitals, and other customers, such as architects and interior design studios. Since 1965, he has been assigned to a three-State sales territory of Delaware, New Jersey, and eastern Pennsylvania. Within his territory petitioner is required to call on approximately 125 dealers, as well as additional customers, to receive orders for office furniture. Petitioner is compensated solely on the basis of a 5-percent commission on sales. Myrtle Desk Co. does not reimburse him for any of his sales expenses.

Prior to 1965, petitioner worked for the Institutional Service Co. as a salesman of school equipment in the Washington, D.C., sales territory, which included the District of Columbia, Maryland, and Virginia.

Petitioner Rosemarie Daly is currently employed as manager of the Georgetown Uniform Co. in Washington, D.C. She has worked for that company since 1964.

The petitioners and their children have lived in a house in McLean, Va., a suburb of Washington, D.C., since 1960. Petitioner maintains an office in his home to carry on certain duties, more fully described below, related to his Myrtle Desk Co. job. In 1975, petitioners incurred living expenses in connection with maintenance of their house in McLean.[1]

During 1975, petitioner made the following business trips from his residence in McLean, Va.

| Location | Number of times[1] | Location | Number of times[1] |
|---|---|---|---|
| Philadelphia, Pa | 17 | York, Pa | 3 |
| Wilmington, Del | 10 | Atlantic City, N.J | 3 |
| Cherry Hill, N.J | 10 | Allentown, Pa | 3 |
| Harrisburg, Pa | 8 | Bethlehem, Pa | 3 |
| Reading, Pa | 7 | Bristol, Pa | 3 |
| Norristown, Pa | 6 | Princeton, N.J | 3 |
| Lancaster, Pa | 6 | Carlisle, Pa | 2 |

[1]These expenses included real estate taxes ($2,176.77) and payments of principal and interest on their home mortgage ($2,160). The real estate taxes and mortgage interest (in the amount of $1,728.49) were allowed as deductions on petitioner's 1975 return.

Petitioner estimated that he incurred food expenses of $12 per day when he ate in his McLean residence, but he did not keep any records of his actual food expenses in McLean.

| | | | |
|---|---|---|---|
| Camden, N.J | 5 | Wildwood, N.J | 2 |
| Dover, Del | 5 | Scranton, Pa | 2 |
| Easton, Pa | 4 | Wilkes-Barre, Pa | 2 |
| Vineland, N.J | 4 | Hazelton, Pa | 2 |
| Lebanon, Pa | 4 | Chicago, Ill[2] | 5 |
| Chester, Pa | 4 | High Point, N.C[3] | 3 |
| Hanover, Pa | 4 | Total number of trips | 134 |
| Trenton, N.J | 4 | | |

[1]The record does not show the number of days or nights spent on each such occasion at the place indicated.

[2]At least one of the Chicago trips was related to an office furniture show in that city in which the Myrtle Desk Co. had an exhibit. The Commissioner concedes the deductibility of the expenses of the Chicago trips.

[3]At least one of the trips to High Point, N.C., was to attend a company sales meeting. The Commissioner concedes the deductibility of the expenses of the High Point trips.

In addition, miscellaneous or occasional customers in petitioner's sales territory were visited on single occasions, but these visits are not included above.

The following table represents the distance in miles to locations visited by petitioner on his business trips measured from Philadelphia, Pa., and McLean, Va.:

| | Mileage from | |
|---|---|---|
| Location | Philadelphia | McLean |
| Philadelphia | --- | 133 |
| Camden, N.J | 2 | 134 |
| Cherry Hill, N.J | 6 | 140 |
| Chester, Pa | 14 | 120 |
| Norristown, Pa | 15 | 139 |
| Bristol, Pa | 21 | 154 |
| Wilmington, Del | 28 | 106 |
| Trenton, N.J | 32 | 165 |
| Vineland, N.J | 37 | 140 |
| Princeton, N.J | 42 | 175 |
| Bethlehem, Pa | 53 | 172 |
| Allentown, Pa | 54 | 173 |
| Reading, Pa | 54 | 134 |
| Easton, Pa | 54 | 183 |
| Atlantic City, N.J | 61 | 176 |
| Lancaster, Pa | 64 | 105 |

| | | |
|---|---|---|
| Dover, Del | 76 | 96 |
| Wildwood, N.J | 81 | 184 |
| Lebanon, Pa | 82 | 128 |
| York, Pa | 88 | 85 |
| Hazelton, Pa | 95 | 183 |
| Harrisburg, Pa | 102 | 107 |
| Hanover, Pa | 105 | 80 |
| Wilkes-Barre, Pa | 110 | 208 |
| Carlisle, Pa | 120 | 100 |
| Scranton, Pa | 122 | 224 |
| High Point, N.C | 435 | 302 |
| Chicago, Ill | 783 | 671 |

The aggregate distance between McLean and the cities petitioner visited in his regular sales territory (excluding Chicago and High Point, N.C.) is 3,744 miles. The aggregate distance between Philadelphia and the same cities is 1,518 miles. The disparity in total mileage is substantially greater if the number of trips to each such city visited is taken into account.

Petitioner's usual weekly business itinerary in 1975 was to leave McLean early Tuesday morning, stay overnight in his territory for 2 nights (Tuesday and Wednesday) and return to McLean late Thursday night.

During 1975, petitioner performed job-related tasks in his McLean residence, usually on Mondays and Fridays, on 72 separate dates. These included planning sales trips; scheduling sales meetings with dealers and potential customers; reviewing previous orders and communications for current status; preparing, for the company, after-action reports for previous weeks' sales trips and itinerary for upcoming weeks; preparing dealer and factory sales and accounting reports; writing inspection reports on all damaged or defective merchandise delivered; preparing individualized catalogues and promotional material for dealers and customers as well as other miscellaneous activities all necessary to the production of income through selling the product. Petitioner's business calling card listed his McLean residential telephone number as his office number. While petitioner was on the road, his daughter answered the telephone for him whenever she was at home; petitioner had no answering service.

The Myrtle Desk Co. was not concerned with where petitioner maintained his residence provided his sales production was

adequate. Petitioner chose to maintain his home and office in McLean, rather than inside of his sales territory, to allow his wife to keep her Washington, D.C., job to avoid the inconvenience of having to sell his house and move his family.

On their 1975 return, the Dalys deducted $7,151.95 for meals, lodging, and travel expenses incurred in connection with petitioner's job. The Commissioner disallowed $7,025.95 of these expenses for failure of substantiation and because they were not ordinary and necessary business expenses, and determined that Philadelphia, Pa., was petitioner's tax home. After concessions by the Commissioner as to $5,073 of the disallowed expenses, deductions of $1,952.95 remain in dispute.[2] The disputed amount includes the costs of travel to the Philadelphia area from Virginia and meal and lodging expenses incurred in the Philadelphia area. These expenses remain in dispute because of the Commissioner's determination that Philadelphia is petitioner's tax home.

## OPINION

Section 162(a)(2), I.R.C. 1954,[3] allows a taxpayer to deduct his expenses for meals, lodging, and transportation incurred while away from home in pursuit of a trade or business. Section 262 prohibits deductions for personal, living, or family expenses. There are three criteria for determining whether travel expenses are deductible: (1) The expenses must be reasonable and necessary; (2) they must be incurred "while away from home"; and (3) they must be incurred in the pursuit of a trade or business. *Commissioner v. Flowers*, 326 U.S. 465, 470 (1946). In order to be deductible, an expenditure must satisfy all three conditions. Applying these tests, we conclude that the Commissioner's disallowance of the disputed deductions must be sustained.

Petitioner argues that his "tax home" is McLean, Va., and

---

[2] The Commissioner concedes that the disputed expenses have been substantiated.

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*       \*       \*       \*       \*       \*       \*

(2) *traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;* \* \* \*

that expenses incurred in traveling from McLean to the Philadelphia area properly are within the scope of section 162(a)(2). Alternatively, if petitioner's "tax home" is Philadelphia, he seeks to deduct his travel, meals, and lodging expenses incurred in traveling from Philadelphia to McLean. Under either alternative, petitioner cannot prevail.

The Court has consistently defined the word "home" as used in section 162 to refer to the vicinity of a taxpayer's principal place of employment and not the place where his personal residence is located, if different from the principal place of employment. E.g., *Foote v. Commissioner*, 67 T.C. 1, 4 (1976); *Kroll v. Commissioner*, 49 T.C. 557, 561–562 (1968).[4] The purpose of the "away from home" deduction is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." See *Kroll v. Commissioner*, *supra* at 562. If an employee incurs duplicate living expenses, we must determine whether the duplication resulted from the needs of his employer's business, or from the employee's personal desire to maintain a residence in one area while working in another. See *Commissioner v. Flowers*, 326 U.S. at 473. We think that petitioner herein had only personal reasons for maintaining his residence completely outside of his sales territory and that he incurred additional travel and living expenses which, in the words of *Commissioner v. Flowers*, *supra* at 473, were "as unnecessary and inappropriate to" the conduct of his employer's business as "were his personal and living costs" in McLean. Compare *Bunevith v. Commissioner*, 52 T.C. 837, 840–842 (1969), affd. without published opinion (1st Cir. 1970), 25 AFTR 2d 70–935, 70–1 USTC par. 9414.

Petitioner has been assigned to a three-State sales territory (Delaware, New Jersey, and eastern Pennsylvania) since 1965. Most of his sales activity was centered in or reasonably near the Philadelphia metropolitan area. Out of a total of 126 trips to locations in his sales territory in 1975 (excluding 8 trips outside of his territory), 44 percent (55 of 126) were to Philadelphia itself or locations within 28 miles of Philadelphia, 66 percent (83 of

---

[4]This rule applies as long as the principal place of business is not temporary as opposed to indefinite. *Kroll v. Commissioner*, 49 T.C. 557, 562–563 (1968). Petitioner makes no claim to "temporary" status, and we note that petitioner has been assigned to his present sales territory since 1965. Cf. *Michaels v. Commissioner*, 53 T.C. 269 (1969).

126) were to locations within 54 miles of Philadelphia, and 80 percent (101 of 126) were to locations within 88 miles of Philadelphia.[5] In contrast, only 6 percent (7 of 126) of his sales trips were to locations as near as 85 miles from McLean, Va. Although petitioner performed paper work in his so-called office in his McLean residence on 72 separate dates in 1975, he testified that "selling is 85 percent of the job." Petitioner's McLean office work was no more than incidental to the other, more important part of petitioner's job (making sales solicitations of customers), and we have not been shown why all of the paper work could not have been performed in the Philadelphia area, which can fairly be characterized as the center of petitioner's commission-producing business activities. See *Wills v. Commissioner*, 48 T.C. 308, 312–313 (1967), affd. 411 F.2d 537 (9th Cir. 1969); *Green v. Commissioner*, 35 T.C. 764, 766–767 (1961), affd. 298 F.2d 890 (6th Cir. 1962).[6] See also *Markey v. Commissioner*, 490 F.2d 1249, 1255 (6th Cir. 1974), revg. a Memorandum Opinion of this Court, the rationale of which subsequently has been adopted by this Court (see *Gardin v. Commissioner*, 64 T.C. 1079, 1083 n. 6 (1975)). Furthermore, petitioner's only reasons for maintaining his "office" in McLean rather than near Philadelphia or in another location within his territory were to enable his wife to keep her Washington, D.C., job and to avoid the inconvenience of moving. The first reason is unrelated to the exigencies of petitioner's Myrtle Desk Co. job, see *Foote v. Commissioner*, *supra*, 67 T.C. at 4–5; *Tucker v. Commissioner*, 55 T.C. 783, 788 (1971), and the second is clearly personal. We conclude that petitioner was not "away from home" when he was in the Philadelphia area, and that the additional costs of travel, as well as the costs of food and lodging on overnight trips that would

---

[5] The data and computations appearing in this paragraph are based upon the stipulated schedules of the parties (pp. 191–193 *supra*), and do not reflect travel involving "miscellaneous or occasional customers" who were "visited on single occasions." Since the burden of proof was upon petitioners, we cannot assume, in the absence of any evidence relating to such single occasions, that the computations would yield results more favorable to petitioners by including data with respect to such single trips. There is also no evidence that the high percentage of trips to locations around Philadelphia disclosed by these tables is in any way unrepresentative of the pattern of petitioner's travel in prior years.

[6] We note that in *Commissioner v. Flowers*, 326 U.S. 465 (1946), the taxpayer maintained an office in his city of residence (Jackson), a city different from his principal place of business (Mobile). Since it was a matter of indifference to his employer where he did the paper work performed in his office, the taxpayer spent more time in Jackson than in Mobile during the period at issue. (326 U.S. at 468.) Nevertheless, the Supreme Court disallowed the taxpayer's travel expenses between Jackson and Mobile, and his expenditures for meals and lodging in Mobile notwithstanding the existence of the Jackson office.

have been unnecessary if petitioner used Philadelphia rather than McLean as his point of departure and as the location of his office, are personal and nondeductible.

That petitioner was allowed to deduct the costs of maintaining an "office" in which to do his paper work in his McLean residence is not determinative of the deductibility of *living and travel* expenses associated with that office. Such latter expenses are nondeductible if incurred because of the taxpayer's personal choice to maintain his office away from his major place of employment. Cf. *Smith v. Warren*, 388 F.2d 671, 673 (9th Cir. 1968); see also *Mazzotta v. Commissioner*, 57 T.C. 427, 429 (1971), affd. 465 F.2d 1399 (2d Cir. 1972).

Petitioner's reliance on Rev. Rul. 73–529, 1973–2 C.B. 37, is misplaced. That revenue ruling is concerned with the problem of drawing the line between (1) those outside salesman who, because they do not have a home or regular place of business, are considered to be itinerants and therefore not entitled to deduct *any* traveling expenses "away from home," and (2) those outside salesmen who may be regarded as having a "home" to be away from. There is no contention here that this petitioner was an itinerant. Plainly, he had a "home," and the Commissioner has in fact conceded that he is entitled to deduct $5,073 of the total amount of $7,151.95 claimed as traveling expenses away from home. The issue is whether petitioner's "home" was his actual place of residence or whether he had a principal place of business that must be regarded as his home within the meaning of the statute. Accordingly, if the taxpayer's actual abode is maintained for personal reasons at a place that is distant from his principal place of business, his deductible travel expenses cannot be determined on the basis of travel from his residence. *Commissioner v. Flowers, supra; Bunevith v. Commissioner, supra.* And the Commissioner has determined here that Philadelphia was petitioner's principal place of business, with the consequence that the principles announced and applied in those cases are applicable here. Petitioner has the burden of proving that determination to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure. In light of the factors discussed

above, we conclude that petitioner has not met his burden of proof.[7] Therefore, while he is entitled to deductions for travel, food, and lodging that would be allowable in respect of travel from Philadelphia as a point of departure, he is not entitled to the added costs which he incurred by reason of using McLean, Va., as his point of origin or as his office location. He chose to reside in McLean for personal reasons, unrelated to the conduct of his business, and such added costs are not deductible under the statute as having been incurred "away from home."

Petitioner's final argument is that if his decision to live in McLean was personal, only the round trip mileage to his sales territory should be disallowed. The point is spurious. Certainly, had he resided in Philadelphia, his costs of food and lodging in that city would not have been deductible. And we have no way of knowing from this record how many overnight trips he would have taken from Philadelphia justifying the allowance of deductions for food and lodging in other places. Thus, deductions must be disallowed here not only in respect of petitioner's excess travel occasioned by starting out from McLean, but also in respect of his Philadelphia food and lodging costs as well as the food and lodging costs that would not have been incurred in overnight trips had he resided in the Philadelphia area. The amount of such costs have not been shown on this record. The burden was upon petitioner to prove error in the Commissioner's determination, and we cannot say on the materials before us that deductions in the entire amount of $1,952.95 remaining in dispute were not properly disallowed.

*Decision will be entered under Rule 155.*

---

[7]*Rambo v. Commissioner,* 69 T.C. 920 (1978), and *Weidekamp v. Commissioner,* 29 T.C. 16 (1957), are distinguishable on similar grounds.