JIMMY A. MANN AND JOAN H. MANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mann v. Commissioner
Docket Nos. 11526-79, 11527-79.
United States Tax Court
T.C. Memo 1982-202; 1982 Tax Ct. Memo LEXIS 543; 43 T.C.M. (CCH) 1089; T.C.M. (RIA) 82202; April 15, 1982. *543 Petitioners' residence was at Danville, Virginia. From December 1975 to November 1979, petitioner-husband was employed as a pipe fitter on the construction of the North Anna nuclear power plant, near Louisa, Virginia. During 1976 and 1977, petitioner-husband stayed at Louisa during the work week, visiting with petitioner-wife and their children only on nonworking weekends. Held: Petitioner-husband's employment at the North Anna project site was indefinite, rather than temporary; his 1976 and 1977 expenses for food and lodging at Louisa and for transportation between Louisa and Danville are not deductible as expenses incurred while traveling "away from home". Sec. 162(a)(2), I.R.C. 1954. Jimmy A. Mann, pro se. Ronald P. Campbell, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners for 1976 and 1977 in the amounts of $ 1,694.17 and $ 2,189.08, respectively. The cases have been consolidated for trial, briefs, and opinion. The issue for decision [1] *544 is whether petitioners may deduct expenditures for transportation, food, and lodging under section 162(a)(2). [2]
FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petitions in these cases were filed, petitioners Jimmy A. Mann (hereinafter sometimes referred to as "Jimmy") and Joan H. Mann (hereinafter sometimes referred to as "Joan"), husband and wife, resided in Danville, Virginia. Since about 1958, petitioners and their three children maintained their personal residence in Danville. During 1976 and 1977, Jimmy was a pipe fitter and a member of Local 491 of the United Association of Plumbers and Pipe Fitters of the United States and Canada, located in Roanoke, Virginia. (This local is hereinafter sometimes referred to as "the Roanoke local".) The Roanoke local's employment procedure required Jimmy *545 to be in Roanoke in order to obtain a referral card from the Roanoke local's representative. The Roanoke local's representative was to arrange for Jimmy to contact construction companies in the area seeking to employ pipe fitters. The Roanoke local's representative was responsible for contacting unemployed members of the local when suitable employment became available within the Roanoke local's area. Employment of members of the Roanoke local outside the local's area was considered as "unemployment" by the Roanoke local's representative. However, absolute unemployment (that is, being without work at any location and on unemployment compensation) was taken into account by the Roanoke local's representative in contacting members with respect to employment opportunities in the local's area. Jimmy was not contacted at any time during the period December 1975 through November 1979 by the Roanoke local's representative with respect to employment in the local's area. During 1976 and 1977, there was no employment for pipe fitters in the local's area. If employment was unavailable through the Roanoke local, Jimmy could and did obtain employment through the local located in Washington, *546 D.C., or the local located in Richmond, Virginia. Utilizing this employment procedure, in December 1975, Jimmy was employed by the Stone and Webster Construction Company of Boston, Massachusetts (hereinafter sometimes referred to as "Stone & Webster"), as a pipe fitter on the nuclear power plant construction project for the Virginia Electric and Power Company at that company's North Anna generating station, Louisa, Virginia. (This construction project is hereinafter sometimes referred to as "the North Anna project".) Except for a two-week period at the end of December 1975 and the beginning of January 1976, Jimmy was continuously employed by Stone & Webster at the North Anna project, at Louisa, from December 1975 until he was laid off in November 1979. Upon being hired by Stone & Webster, Jimmy was required to obtain a clearance and attend radiation school and other schools, lasting in the aggregate about one week, pertaining to employment and safety at a nuclear power plant. When he was hired by Stone & Webster, Jimmy was not given information by anyone with respect to either the expected length of his employment, or when his employment might terminate. During all of 1976 and *547 1977, Jimmy lived in rented quarters in Louisa, while Joan and their children resided in their personal residence in Danville. Jimmy visited with Joan and their children either in Danville or Louisa on weekends he was not required to be working. During 1976 and 1977, Jimmy spent $ 3,825 and $ 4,094.80, respectively, for travel between Danville and Louisa, and for meals and lodging in the Louisa area in connection with his employment at the North Anna project. Stone & Webster reimbursed Jimmy for his travel expenses for 1976 and 1977 in the amounts of $ 1,893.06 and $ 2,088.18, respectively. These latter amounts were included by petitioners in the incomes shown on their tax returns. During part of 1976, Joan was employed by the Memorial Hospital, Danville. During 1976 and 1977, Jimmy's tax home was the vicinity of the North Anna project. OPINION Petitioners maintain that a taxpayer's "tax home" is the taxpayer's residence, at least while the period away from the residence is of temporary duration. They assert that Jimmy's residence was in Danville and his stay at Louisa was temporary, and so Jimmy's "tax home" was in Danville. Respondent's position is that a taxpayer's "tax *548 home" is the taxpayer's principal place of business, unless the employment at a place away from the usual residence is temporary, rather than indefinite. He asserts that Jimmy's principal place of business was t Louisa and his job there was indefinite, and so Jimmy's "tax home" was at Louisa. We agree with respondent. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 (sec. 262). [3]Section 162(a)(2)[4] *549 expressly permits a taxpayer to deduct what might otherwise be personal expenses if all the following requirements are met ( Commissioner v. Flowers,326 U.S. 465, 470 (1946)): (1) The expense is a traveling expense (this includes such items as transportation, fares, and food and lodging expenses incurred while traveling); (2) The expense is incurred while "away from home"; and (3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business. Respondent has, in effect, conceded that requirements (1) and (3) have been satisfied. He directs our attention to requirement (2). This Court has held that as a general rule "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Daly v. Commissioner,72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (CA4 1981). Since Jimmy's principal place of employment during the years in issue was at the North Anna project site, under the general rule the vicinity of this construction project was his "tax home". Petitioners rely on an exception to the general rule. Under this exception, a taxpayer's personal residence may be the "tax home" if the principal place of business is "temporary", rather *550 than "indefinite". See Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). A place of business is a "temporary" place of business if the employment is such that "termination within a short period could be foreseen". Albert v. Commissioner,13 T.C. 129, 131 (1949). See Michaels v. Commissioner,53 T.C. 269, 273 (1969). Or, viewed from the other side of the coin, an employment is for an "indefinite", "substantial", or "indeterminate" period of time if "its termination cannot be foreseen within a fixed or reasonably short period of time". Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (CA6 1971). "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner,49 T.C. 557, 562 (1968). These are questions of fact ( Peurifoy v. Commissioner,358 U.S. at 60-61), as to which petitioners have the burden of proof ( Daly v. Commissioner,72 T.C. at 197). Jimmy was not told that his work at the North Anna project would be only for a short time. Petitioners stress the uncertainty *551 of length of employment at such projects. However, there is nothing in the record to negate the effect of the fact that Jimmy worked at the North Anna project for almost 4 years. On the basis of the record in the instant cases, we conclude that the Peurifoy "temporary" exception to the general "tax home" rule does not apply, and Jimmy's "tax home" for 1976 and 1977 was the vicinity of the North Anna project. See Babeaux v. Commissioner,601 F.2d 730 (CA4 1979), revg. three Memorandum Opinions of this Court. [5]
The fact that, for a time in 1976, petitioners were a two-wage-earner family, with Joan being employed in the Danville area, does not affect the deductibility of Jimmy's expenses in the instant cases. Mitchell v. Commissioner,74 T.C. at 584. See Daly v. Commissioner, 662 F.2d at 255-256 (Murnaghan, J. concurring). We have no basis for critizing petitioners' decisions as to where they should live and where Jimmy should work. These decisions were affected by both business and nonbusiness considerations. Under the law, the business considerations *552 are not sufficiently overwhelming to allow us to uphold petitioners' claimed deductions. We hold for respondent. Because of respondent's concession as to 1976 (see n. 1, supra), Decision will be entered for the respondent in docket No. 11526-79.
Decision will be entered under Rule 155 in docket No. 11527-79.
Footnotes
1. After the trial, respondent conceded that petitioners are entitled to the union dues deduction claimed on their tax return for 1976. On brief, petitioners concede the medical expenses and safety equipment deduction disallowances. 2. Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *
5. Patrick v. Commissioner,T.C. Memo. 1977-153; Babeaux v. Commissioner,T.C. Memo. 1977-154; Waldrop v. Commissioner,T.C. Memo. 1977-190↩.