JOHN J. MOXEY AND CAROLE M. MOXEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moxey v. Commissioner
Docket No. 2760-87.
United States Tax Court
T.C. Memo 1988-156; 1988 Tax Ct. Memo LEXIS 192; 55 T.C.M. (CCH) 607; T.C.M. (RIA) 88156; April 18, 1988. John Kennedy Lynch, for the petitioners. Jack E. Prestrud, and Donza M. Poole, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) of the Internal Revenue Code *193 (redesignated section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755), and Rules 180, 181, and 182. [1]
Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1982
$ 2,681.00
1983
2,789.00
1984
4,699.59
The sole issue for decision is whether petitioners are entitled to deduct petitioner-husband's costs of living and traveling while away from home under section 162(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. This reference incorporates the stipulation of facts and the attached exhibits. Petitioners, husband and wife, resided in Cody, Wyoming, when their petition in this case was filed. Petitioners filed joint Federal income tax returns for the years in issue with the Internal Revenue Service Center, Ogden, Utah. John J. Moxey (petitioner) is a pipefitter by trade. He has been a continuous member of Pipefitters Local *194 No. 120, Cleveland, Ohio (union), since at least the early 1960s. From that time until 1977, petitioner lived and worked in the Cleveland area. In 1977, petitioner, his wife, and their two daughters moved to Cody, Wyoming. The move was motivated primarily for business reasons as petitioner and another man intended to develop and operate a campground near Yellowstone National Park, 52 miles to the west. However, petitioner's plans never crystallized. Hence, between 1977 and 1981, he worked as a pipefitter at sites in Wyoming, Idaho, Montana, North and South Dakota, Minnesota and Ohio. Petitioner was able to secure his assignments because he was a card-carrying union member. In the latter part of 1981, petitioner found himself unemployed and without immediate job prospects in Wyoming. In early January 1982, he contacted a union representative in Ohio inquiring about possible work in the Cleveland area. The representative informed petitioner of a pipefitter's job at the Perry Nuclear Power Plant (Perry) in North Perry, Ohio, some 35 miles from Cleveland. Petitioner was told that the particular job was expected to last approximately six weeks. Petitioner was familiar with *195 the Perry site having worked there for several months in 1981, and he accepted the assignment. During the years in issue, Perry was under general construction. Furthermore, much of the already completed construction at Perry had to be redone because of numerous building violations. From 1982 to 1984, petitioner worked at the Perry site for the following contractors: Date
Employer
From
To
Schneider Power Corp.
Mid-January 1982
March 1, 1982
R. J. Frazier Co.
March 4, 1982
October 1, 1982
Schweizer Dipple, Inc.
October 4, 1982
November 23, 1982
R. J. Frazier Co.
November 26, 1982
February 9, 1983
Johnson Controls
February 12, 1983
March 15, 1984
Schweizer Dipple, Inc.
March 18, 1984
April 3, 1984
Suburban-Frazier, JV
April 6, 1984
November 18, 1984 [2]
Generally, the above periods ran consecutively. Petitioner, however, was laid off for three weeks in the summer of 1983 during which time he returned to Cody. Petitioner also experienced short (one or two day) layoffs at the hands of each employer. [3] In addition to his *196 work at Perry, petitioner did three freelance weekend jobs at the LTV steel mill near Cleveland in 1983. Petitioner also worked at Perry for several months in 1984. Petitioner made several attempts during the years in issue to find suitable work in or near Cody. [4] However, he had no success due to the lack of pipefitting jobs in Wyoming. In 1983, petitioner worked (not as a pipefitter) for a tire company in Cody, but discontinued his employment after one week. While in Ohio, petitioner rented housing near Perry. His family resided in Cody and made occasional visits to petitioner in Ohio. With respect to his employment at Perry, petitioner claimed deductions for away-from-home traveling expenses, including the costs of lodging and meals while in Ohio, in the amounts of $ 13,577.48, $ 10,966 and $ 10,859 for the years 1982, 1983 *197 and 1984, respectively. In his notice of deficiency respondent disallowed the deductions in their entirety on the ground that petitioner's employment at Perry was "for an indefinite length of time rather than being temporary in nature." OPINION Personal living expenses are ordinarily nondeductible. Sec. 262. However, section 162(a)(2) allows a taxpayer to deduct certain living expenses, including the costs of lodging and meals, paid or incurred while away from home in the pursuit of a trade or business. The issue here is whether petitioner was "away from home in the pursuit of trade or business" within the meaning of section 162(a)(2) while in Ohio. Generally, a taxpayer's "home," as used in section 162(a)(2), is the city or location of his principal place of business and not where his or her personal residence is located. Mitchell v. Commissioner,74 T.C. 578, 581 (1980). Since petitioner's principal place of employment during the years in issue was at Perry, under the general rule, Perry was also his "tax home." Petitioner relies on an exception to this general rule, however. Under the exception, a taxpayer's personal residence may be the "tax home" *198 if employment at the principal place of business is "temporary" rather than "indefinite." See Peurifoy v. Commissioner,358 U.S. 59, 60 (1958); Norwood v. Commissioner,66 T.C. 467, 469 (1976). Employment may be regarded as temporary if it can be expected to last for a short period of time. McCallister v. Commissioner,70 T.C. 505, 509 (1978). On the other hand, "if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commisioner,49 T.C. 557, 562 (1968). The Sixth Circuit Court of Appeals has held that employment is indefinite where the taxpayer's maintenance of a home away from his principal place of employment was not required by business exigencies, but was instead motivated by personal reasons. Ham v. United States,408 F.2d 671, 672 (6th Cir. 1969). See also Tucker v. Commissioner,55 T.C. 783, 785-786 (1971). Whether employment is temporary or not is a question of fact ( Peurifoy v. Commissioner, supra at 60-61) *199 as to which petitioner has the burden of proof. Daly v. Commissioner,72 T.C. 190, 197 (1979), affd. 662 F.2d 253 (4th Cir. 1981). Petitioner contends that his employment at Perry should be classified as temporary because no single job there could have been expected to last more than a couple of months. We disagree with this contention. Employment at one location on different assignments or for multiple contractors constitutes continuous employment. Smith v. Commissioner,33 T.C. 1059, 1062 (1960). See also Tamargo v. Commissioner,T.C. Memo. 1984-175. Therefore, our focus here is on petitioner's overall employment at Perry, not on any single assignment. Given this focus, it is clear that petitioner's employment at Perry, while perhaps temporary at its inception, became indefinite due to the passage of time. See Kroll v. Commissioner, supra.
There was every indication in 1982 that petitioner could expect to find suitable work at Perry for a substantial period. See McCallister v. Commissioner, supra. The construction project was large and relatively complex.[5] Moreover, *200 much of the already completed construction had to be redone. Thus Perry had an almost constant demand for pipefitters of petitioner's talent and experience. In fact, petitioner worked at Perry for more than three years. Employment for this length of time cannot be regarded as temporary. Furthermore, during the years in issue, petitioner had no business ties to the Cody area nor were there prospects of landing a pipefitting job near his residence. Petitioner's choice to maintain a residence in Wyoming was in all respects a personal choice. Such a choice, motivated by personal reasons unrelated to petitioner's trade or business, does not bring petitioner within the purview of the "temporary" exception. See Ham v. United States, supra;Tucker v. Commissioner, supra at 787. Petitioner also contends that he was not continuously employed at Perry. This contention is not borne out in the record. Petitioner was employed at Perry for almost 33 of the 36 months in issue. *201 The short layoffs and the one week job in Cody were no more than brief interruptions to petitioner's employment at Perry. Moreover, decreases in employment due to work stoppages do not make indefinite work temporary. Frederick v. United States,603 F.2d 1292, 1296 (8th Cir. 1979). Finally, in all instances when petitioner switched employers, he did not miss a single day's work. We find that petitioner's employment at Perry was continuous for the years in issue. We hold that petitioner's employment at Perry was not temporary in the years 1982, 1983, and 1984. Consequently, petitioner may not deduct away-from-home traveling expenses under section 162(a)(2) for those years. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Any Rules reference shall be deemed to refer to the Tax Court Rules of Practice and Procedure. ↩
2. For four weeks during this span petitioner also worked an overlapping job at Perry for R. J. Frazier Co.↩
3. The record does not reveal the dates of the short layoffs nor the dates, if any, that petitioner returned to Cody while laid off. ↩
4. According to the United States Bureau of the Census, Cody, county seat of Park County, Wyoming, had a population of 6,790 in 1986. Park County had an area of 6,959 square miles and a population of 21,639. ↩
5. The record indicates that at one point during the relevant years there were over fifty general contractors and approximately twelve pipefitting contractors employed at the site. ↩