STELLA WAITZKIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Waitzkin v. Commissioner
Docket No. 19807-89.
United States Tax Court
T.C. Memo 1992-216; 1992 Tax Ct. Memo LEXIS 236; 63 T.C.M. (CCH) 2740; April 13, 1992, Filed *236 Decision will be entered under Rule 155. Henry W. Trimble, Jr., for petitioner. Steven R. Winningham, for respondent. PAJAK
PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rule 180, 181, and 182. (All section numbers refer to the Internal Revenue Code for the taxable year in issue. All Rule numbers refer to the Tax Court Rules of Practice and Procedure.) Respondent determined a deficiency and additions to tax in petitioner's 1984 Federal income tax as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
$ 2,825
$ 141
[1]
In the answer, respondent asserted a 25-percent addition to tax under section 6651(a)(1). After concessions, the Court must decide: (1) Whether petitioner's art activities were engaged in for profit; (2) whether petitioner is entitled to deduct various expenses *237 reported on Schedule C of her return; (3) whether petitioner is entitled to any investment tax credit; (4) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file her return on time; and (5) whether petitioner is liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in New York, New York, when her petition was filed. Petitioner has been engaged in artistic activities all her adult life. From the time she was separated from her husband in 1959 until 1974, she supported herself entirely with income from these activities. Petitioner sold paintings, taught art classes, and designed fixtures for a family-owned company, Globe Lighting Products, Inc., which became Reho Industries (Reho). Petitioner is a sculptor and painter. Her work includes sculpture (polymer, cast marble, sandstone, and bronze), outdoor sculpture, relief, and paintings. Petitioner has worked full time as an artist for many years. After her mother died, petitioner became a member of the board of directors of Reho and began earning director's fees. In 1975, petitioner received approximately *238 $ 63,000 in cash plus stock in Reho on the settlement of her mother's estate. In 1984, petitioner received $ 559,875 in partial liquidation of her Reho stock. Throughout the years, petitioner received dividends from the company with respect to her stock. Since 1975, petitioner was not dependent upon the sale of her artwork for her livelihood. Petitioner obtained a number of fellowships at artists' colonies, including the Yaddo, Saratoga, New York, and the McDowell Colony, Peterborough, New Hampshire. An artists' colony is a secluded environment where selected artists work for a period of time so that they can exercise their creativity and work intensively on art projects. From the early 1970's through the early 1980's, petitioner was awarded 13 fellowships and two awards in recognition of her potential as an artist. In the period 1973-1984, petitioner's work was in numerous exhibitions at museums and art galleries. Petitioner had one-person exhibitions as follows: 1984
Creiger Sesen Gallery, Boston
1983
Everson Museum of Art, Syracuse, New York
1977
E. P. Gurewitsch, New York
James Yu Gallery, New York
1976
Donnell Library, New York
1975
Lowenstein Library, Fordham University, New York
James Yu Gallery, New York
1974
James Yu Gallery, New York
Yale University Art Gallery, Calhoun College,
New Haven, Connecticut
*239 Some of the group exhibitions in which petitioner exhibited her artwork were as follows: 1984
The Cleveland Museum of Art, Cleveland, Ohio
The New York Public Library at 42d Street,
New York
1982
La Bibliotheque Publique du Centre National D'Art
et de Culture Georges Pompideau, Paris
(traveling exhibition)
1981-2
Franklin Furnace, New York
1981
Grand Palais, La Premiere Foire, Institute de
Libres, Paris
Walker Art Center, Minneapolis, Minnesota
1979
Dayton Art Institute, Dayton, Ohio
The University of Maryland, College Park:
"Women in Washington Public Collections"
1978
O. K. Harris, New York, New York
Washington Project for the Arts,
Washington, D.C.
1977
Barbara Fendrick Gallery, Washington, D.C.
Renwick Gallery of the National Museum of
American Art, Smithsonian Institution,
Washington, D.C.
1976
Barbara Fendrick Gallery, Washington, D.C.
The Bronx Museum of the Arts, Bronx,
New York: "The Year of the Woman: Reprise"
New York State University College at Potsdam:
"Absence as Presence"
1975
New York State University College at Potsdam:
"Potsdam Plastics"
1974
Finch College Museum, New York: "Recent
Acquisitions"
Virginia Museum of Fine Arts, Richmond:
"Sculpture U.S.A."
1973
Virginia Museum of Fine Arts, Richmond:
Recent Acquisitions
University of Wisconsin, Center for 20th Century
Studies, Madison, Wisconsin
*240 Petitioner had artwork in numerous other invitational exhibitions. Petitioner has artworks in the following public collections: Walker Art Center, Minneapolis, Minn.
New York Public Library at 42d Street Israel Museum Jewish Museum Renwick Gallery, National Museum of American Art, Smithsonian Institution, Washington, D.C. Everson Museum of Fine Art, Syracuse, New York
Patrick Lanon Foundation Museum, Florida
Virginia Museum, Richmond, Virginia
Petitioner has artworks in the following corporate collections: Phillip Morris, Inc.
Bectin Dickenson Dow Jones & Co.
Petitioner's artwork has been shown in numerous commercial galleries whose business is selling art for a profit. Her work was shown in the James Yu Gallery in New York City three times during the 1970's. Petitioner's work was shown in the O. K. Harris gallery once in 1978, two times during the late 1970's in the Barbara Fendrick Gallery in Washington, D.C. (and after the year in issue, at the Barbara Fendrick Gallery in New York). During 1984, petitioner's artwork was shown at the Creiger Sesen Gallery in Boston, and at the Witkin Gallery in New York City. In 1984, her work was purchased for *241 resale by the Stephen Haller Fine Art Gallery. (Petitioner's works have been shown in a number of commercial galleries, as well as museums, after the year in issue.) Petitioner's work is of a caliber and has been exhibited with very financially successful artists, such as Robert Rauschenberg, Larry Rivers, Jim Dine, Helen Frankenthaler, Jasper Johns, Andy Warhol, Robert Motherwell, Claes Oldenburg, Stan Seitz Twombley, and William Wiley. During her career as an artist, petitioner has contacted museums and galleries in order to have her work accepted for exhibitions. Through word of mouth, showings and exhibitions, reviews by art critics, and advertising efforts, petitioner's reputation spread. Museums and art galleries customarily advertise shows and send invitations to announce shows. Petitioner consistently invited prospective purchasers, art gallery representatives, museum personnel, or other artists to her studio/apartment to show her work. Petitioner had sales of her artwork during the year in issue as well as in each of the 10 years before (and in years thereafter). These sales resulted from, inter alia, the gallery showings, petitioner's efforts, and the efforts of *242 Ms. Mary Lanier, a professional art consultant who frequently recommended that major corporate clients purchase petitioner's work. Although petitioner had many sales of her artwork during these years, due to a number of factors, including longstanding discrimination against female artists in the art world and a lack of appropriate commercial recognition, petitioner's artwork did not sell as much as was hoped. For the years 1975 to 1984, her reported Schedule C expenses, gross income from the sales of art, and her losses are shown below: Year
Expenses
Gross Income
Losses
1975
$  16,093
$  7,586
$   8,507
1976
6,363
1,280
5,083
1977
15,328
8,790
6,538
1978
16,565
8,192
8,373
1979
19,328
11,042
8,286
1980
23,218
4,363
18,855
1981
21,828
400
21,428
1982
26,113
1,325
24,788
1983
34,135
18,299
15,836
1984
46,995
5,975
41,020
Petitioner kept checks and receipts for her expenditures in envelopes labeled as to the nature of the items. Petitioner relied on her certified public accountant, Mr. Irvin Ploss, to review the receipts to determine which expenses were business expenses, and to prepare the income tax returns. Mr. Ploss also represents *243 major corporate clients and has been employed by various Governments, including the United States, in connection with tax matters, as well as other subjects. At the trial, petitioner was not present due to her physical condition. Mr. Ploss testified about petitioner's expenses and deductions. The expenses and deductions for the year in issue are detailed below. Petitioner works both in New York City and Martha's Vineyard, Massachusetts. Petitioner lives in Martha's Vineyard during the warmer months and in New York City the rest of the year, traveling between the two and elsewhere at various times. Petitioner rents a small studio/apartment and two separate rooms in a New York City hotel. The rooms are not connected to the apartment. Petitioner used a portion of her studio/apartment as her living area and the rest of it as a studio/work area. Petitioner used each of the other two rooms in the hotel as storage space for her works of art. Petitioner did not go out often to shop or socialize, but spent most of her time working on her art in terms of creating it, producing it, and promoting it. As a result of her pursuit of her profession, she has filled part of her studio/apartment *244 and the other rooms with her work. The materials that petitioner uses include a plastic resin which is toxic until it hardens. Petitioner prefers to work in a garage with an open wall during the warmer months so that toxic fumes that are emitted by the plastic resin can dissipate. Petitioner has damaged her lungs as a result of inhaling the chemical fumes. Petitioner rented space in a loft in New York City so that she could mix the toxic chemicals for her artwork and produce castings of subject matter away from her studio/apartment. She used part of that loft to store some of her art. Petitioner also rented another loft where she stored her paintings. The rent at the hotel was $ 400 for petitioner's studio/apartment and $ 550 for the other two rooms, or a total of $ 950 per month (or $ 11,400 per year). Because of a dispute with the hotel, petitioner's rental payments totaled $ 6,339 [1] in 1984. Mr. Ploss allocated about 50 percent of the rent paid for her studio/apartment in the amount of $ 1,092 as a business expense. This, plus the rent for the other two rooms, totaled $ 4,754, which petitioner deducted as a business expense. Petitioner did not deduct rent for the Martha's *245 Vineyard location, but deducted $ 6,175 for loft rent and $ 819 for warehouse storage. Petitioner deducted $ 1,000 for insurance on her artwork and $ 30 for liability insurance on her apartment. Petitioner purchased a Volvo turbo station wagon for $ 18,750 on June 11, 1984. She used it to carry her supplies, castings, and artwork between supply stores, her studio, Martha's Vineyard, artists' colonies, and the loft. Before purchasing the Volvo, she used a 1973 car (older car) for the same purposes. Sometimes, petitioner delivered and picked up her artwork to/from galleries or museums. On other occasions, she shipped the artwork. Petitioner paid for insurance and a parking space in a garage in New York City. After she purchased the Volvo and added it to her insurance, petitioner moved the older car to Martha's Vineyard and parked it there. Petitioner parked the Volvo in the garage parking space in New York City. She carried insurance *246 for both cars. Petitioner deducted $ 1,214 for parking for the car and station wagon, $ 1,257 for automobile expenses, and $ 3,470 for automobile insurance for the car and station wagon. Petitioner also took depreciation of $ 4,688 and claimed, but did not use, $ 750 of tentative investment credit for the Volvo. Depreciation that petitioner took on various items is as follows: $ 627 for a $ 4,181 computer, $ 112 for upholstery on some furniture in her New York City apartment, $ 46 for a $ 307 humidifier, and $ 15 for her telephone, all of which she acquired in 1984. Petitioner claimed $ 427 in tentative investment credit for these items, but did not use any of this credit. Petitioner also deducted depreciation of $ 5 for a typewriter and $ 23 for an unidentified item, each acquired before 1984. Petitioner on various occasions paid other persons to lift and load art items that she could not lift herself, and to help her with casting sculptures. She paid $ 2,304 for these purposes. She also paid $ 5,970 for materials. Petitioner deducted $ 6,169 for legal and professional services, allegedly rendered to her over an 8-year period by Mr. Ploss. Petitioner deducted $ 1,629 for *247 entertaining during the taxable year, with about $ 450 claimed for studio/apartment expenses, and the balance for restaurant bills. Petitioner deducted a total of $ 3,334 for travel, with approximately $ 2,000 for a trip to Egypt and about $ 1,334 for other travel. This included ferry trips and travel to Massachusetts. Petitioner incurred $ 1,372 in telephone charges. She allocated $ 10 per month, the basic phone charge with some local service, for personal use, and deducted $ 1,252, including all the long distance charges, as a business expense. Petitioner also deducted a number of other miscellaneous expenses: $ 74 for advertising; $ 176 for dues and publications; $ 12 for freight; $ 50 for interest; $ 98 for office expense; $ 125 for repairs; $ 189 for "Xmas" and gifts; $ 1,023 for "Publicity Photos"; $ 20 for a credit card fee; and $ 305 for taxis to and from airports and around town. Respondent determined that petitioner's activities were not engaged in for profit and disallowed all her Schedule C deductions to the extent they exceeded her gross receipts. Respondent also disallowed petitioner's tentative investment credit claimed. Respondent also disallowed $ 25,015 in *248 Schedule A legal fees. Respondent made adjustments to petitioner's allowable medical expenses and contributions to account for the changes in taxable income resulting from the disallowances. The parties have stipulated that of the $ 25,015 in legal fees, $ 5,015 will be allowed as a Schedule A expense, and that the balance of $ 20,000 will be capitalized as a cost of petitioner's stock in Reho. OPINION Petitioner bears the burden of proving respondent's determinations to be wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). As a preliminary matter, we address respondent's request that, because petitioner was not present to testify at trial, we infer that her testimony would have been unfavorable with respect to the profit objective, citing Kraus v. Commissioner, 59 T.C. 681, 696 (1973), affd. 490 F.2d 898 (2d Cir. 1974). (The Second Circuit is the Court of Appeals to which an appeal in this case would lie.) This case is distinguished from Kraus because Mr. Kraus was in the courtroom and failed to testify. Petitioner did not appear at the trial. Petitioner was not a young woman, and a letter was submitted *249 from her doctor which stated that petitioner was in poor health and reacted poorly to stress. As in Snyder v. Commissioner, T.C. Memo. 1969-173, we believe there was sufficient explanation for her absence. Even without petitioner's testimony, enough evidence was introduced to prove that her art activities were engaged in for profit. Petitioner's testimony would have been helpful in our analysis of petitioner's claims to the various deductions and credits. With respect to these claims, we will do our best based on the evidence presented. Art Activities for Profit
Section 183 allows deductions for ordinary and necessary expenses arising from an activity not engaged in for profit only to the extent of the gross income derived from such activity, less the amount of those deductions which are allowable regardless of whether or not the activity is engaged in for profit. In order to prevail, petitioner must show that she pursued her artistic activities with the objective of making a profit. Sec. 1.183-2(a), Income Tax Regs. The test to determine whether an activity is engaged in for profit is whether the individual is engaged in the activity with "the actual *250 and honest objective of making a profit". Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Although petitioner's expectation of profit need not be reasonable, she must continue the activity with the objective of making a profit. Churchman v. Commissioner, 68 T.C. 696 (1977); sec. 1.183-2(a), Income Tax Regs. We must consider all the facts and circumstances of this case with attention to objective factors. Sec. 1.183-2(a) and (b), Income Tax Regs.
There are admittedly factors which might indicate a lack of profit objective. Although petitioner previously supported herself by her artistic activities, including teaching and designing, petitioner was no longer dependent upon them after she started receiving director's fees and dividends. Petitioner has a history of losses. She must derive great pleasure from creating her artwork and seeing it displayed in many forums. But "the fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit". Sec. 1.183-2(b)(9), Income *251 Tax Regs. No doubt the fact that petitioner had income from other sources enabled her to pursue her art career. Nevertheless, "a history of losses is less persuasive in the art field than it might be in other fields". Churchman v. Commissioner, 68 T.C. 696, 701 (1977). It is well recognized that profits may not be immediately forthcoming in the creative art field. Examples are legion of the increase in value of a painter's works or a sculptor's works after he or she receives public acclaim. Many artists have to struggle throughout their careers. This does not mean that serious artists do not intend to profit from their activities. It only means that their lot is a difficult one. Throughout her career, petitioner improved her skills. Petitioner devoted most of her time to producing artwork. She obtained many fellowships for artists in order to accomplish these ends. She did not lead a lavish lifestyle. Petitioner promoted her work herself and invited prospective purchasers and representatives from galleries and museums to her studio/apartment to show them her work. She has had her work promoted by a number of gallery dealers. Petitioner has consistently *252 sold art for a number of years. The record is replete with evidence of showings and exhibitions of petitioner's work as a result of her efforts to promote her artwork. Thus, her expertise is well established, and she works full time as an artist. These are factors pointing to a profit objective. Sec. 1.183-2(b)(2) and (3), Income Tax Regs.
While petitioner has not sold as much as could be hoped due to certain conditions in the art world, we believe that petitioner sought recognition and profit. Petitioner maintains a large inventory of her artwork, and as her work is appreciated more, we believe that petitioner will enjoy greater financial benefits from her work. Petitioner is a dedicated artist who has had much success and recognition, and who wants to sell and intends to make a profit from her work. Churchman v. Commissioner, supra at 702-703; sec. 1.183-2(b), Income Tax Regs.
This case is distinguishable from Porter v. Commissioner, T.C. Memo. 1969-288, affd. per curiam 437 F.2d 39 (2d Cir. 1970). In Porter v. Commissioner, supra, the taxpayer did not sell much art and only for small amounts *253 over a 16-year period. Here, during a shorter period of time, petitioner, a lifelong artist, has sold much more art for significant amounts. Moreover, petitioner is a nationally recognized artist whose work has been shown and exhibited in many well-known galleries and famous museums. An impressive list of witnesses who are knowledgeable about the contemporary art world testified about petitioner's abilities, her reputation as an artist, and her potential: Ivan C. Karp, O. K. Harris Gallery, New York City; Barbara Fendrick, Barbara Fendrick Gallery, Washington, D. C. and New York City; James Yu, James Yu Gallery, New York City; Susan Goodman, Jewish Museum, New York City; Richard Minsky, Center for Book Arts, New York City; Stephen Haller, Stephen Haller Fine Art Gallery, Washington Depot, Connecticut; Evelyne Daitz, Witkin Gallery, New York City; Mary Lanier, Professional Art Consultant, New York City; Wendy Jeffers, Independent Curator, New York City; Anita Shapolsky, Anita Shapolsky Gallery, New York City; and Alison Weld, Curator, New Jersey State Museum, New Jersey. Based on the testimony of these witnesses and on other evidence in the record, we believe that at any moment, *254 petitioner might become even more commercially successful and earn more than enough to cover any losses in prior years. See Bessenyey v. Commissioner, 45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. 1967). On this record, we believe that petitioner's art activities were engaged in for profit. Schedule C Expenses
We next consider the deductibility of petitioner's various expenses claimed on her Schedule C. Respondent has orally stipulated that respondent is not challenging the amounts of these deductions. Respondent is challenging whether the amounts are deductible. Petitioner deducted $ 3,669 as rent paid on two unconnected rooms in her hotel which she used solely as storage for her artworks. Petitioner also deducted $ 819 for warehouse storage and $ 6,175 for rent for the loft where she made castings. These were ordinary and necessary expenses, and petitioner is entitled to deduct these expenses under section 162. The insurance paid on petitioner's stored artwork and on her studio/apartment, to the extent attributable to the percentage of business use allowed below, also is deductible. Section 280A strictly limits the deduction of *255 expenses associated with an office in the home. This section provides as a general rule that no deduction otherwise allowable shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. An exception to the general rule of nondeductibility is in section 280A(c)(1). This section permits a deduction for the expenses of a home office if a portion of the dwelling unit is used exclusively and on a regular basis for the taxpayer's business. Petitioner took a deduction for approximately 50 percent ($ 1,092) of the rent paid on the studio/apartment in the hotel in New York City where she lived, produced, and showed her art. Based upon the facts of this case, and the testimony of individuals who visited her apartment, we are satisfied that at least 50 percent of her apartment was used exclusively and on a regular basis for her business. Petitioner is entitled to the deduction claimed. Sec. 280A(c)(1). Section 162(a) permits a deduction for the expense of operating an automobile used in the conduct of a trade or business. A taxpayer is entitled to deduct such expenses if the taxpayer proves such expenses with, for *256 example, "adequate records." See sec. 1.162-17(d)(2) and (3), Income Tax Regs. The year before us is 1984. Thus, the strict recordkeeping requirements of section 274 are not relevant because these provisions were made applicable to listed property, including automobiles, for taxable years beginning after 1985, by Pub. L. 99-44, sections 1-6, 99 Stat. 77-79 (1985). Petitioner deducted $ 1,257 for automobile expenses, including gas and repairs, $ 1,214 for parking, and $ 3,470 for automobile insurance. Mr. Ploss, petitioner's accountant, testified that business use comprised virtually all the use of the Volvo, as well as the older car up to the time the Volvo was purchased. Petitioner deducted all the expenses of both cars. We need not accept testimony without reservation. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). We believe that the cars were used for both business and personal use. An allocation of an appropriate percentage of each use must be made. In such cases, we bear heavily against petitioner because the inexactitude is of her own making. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). *257 Using our best judgment, we allow petitioner 50 percent of the automobile expenses, parking, and the automobile insurance. Petitioner is also entitled to deduct 50 percent of the depreciation attributable to the Volvo. Section 162(a)(2) permits a deduction for traveling expenses incurred while away from home in the pursuit of a trade or business. Expenses are deductible under this section only if (1) they are reasonable and necessary traveling expenses; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). This Court has long held that "home" as used in section 162 means the location of the taxpayer's principal place of business. Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981). The expenses of travel away from home must be incurred because of the "exigencies of business rather than the personal conveniences and necessities" of the taxpayer. Commissioner v. Flowers, supra at 474. Petitioner maintained two homes, one in New York City and one in Martha's Vineyard, Massachusetts. *258 New York City was petitioner's place of business because she did most of her work in that city. She also stored most of her art at or near her home in New York City. We believe that petitioner's travel to and in Massachusetts was not motivated by the exigencies of business but rather the personal conveniences and necessities of petitioner. The house in Martha's Vineyard was petitioner's summer home even though she did work while she was there. Therefore, the approximately $ 1,334 of travel expenses related to these activities is not deductible. Sec. 262. Moreover, we cannot allow them under the strict substantiation requirements of section 274(d). Sanford v. Commissioner, 50 T.C. 823, 828-830 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Unfortunately for petitioner, the same holds true for the expenses of her trip to Egypt. Petitioner submitted no records or evidence which satisfied the requirements of section 274(d). Therefore, respondent is sustained in the disallowance of petitioner's expenses for her trip to Egypt. (The approximately $ 1,334 of travel expenses disallowed above and the disallowance of approximately $ 2,000 *259 for the trip to Egypt result in the disallowance of the total $ 3,334 claimed for travel.) To permit a deduction for depreciation, equipment must be used in a trade or business. Petitioner deducted $ 627 for a $ 4,181 computer, $ 112 for upholstery on some furniture, $ 46 for a $ 307 humidifier, $ 15 for her telephone, $ 5 for a typewriter, and $ 23 for an unidentified item. Petitioner did not establish any business use of her computer, furniture, or humidifier. Petitioner's accountant did not know what the other unidentified item was, although it was depreciated. These items are personal in nature, and expenses with respect to these items are nondeductible under section 262. Petitioner incurred $ 1,372 in telephone charges, but allocated only $ 120, the total of the monthly basic hookup charges, to her personal use. Petitioner presented no evidence to show the number or portion of business calls she made on her telephone. Even though we believe that the majority of the telephone use was for personal purposes, we are certain that she made some business use of her telephone. We may make an estimate of the amount of the deduction to which petitioner is entitled if we believe *260 that there are deductible expenses which she incurred. Cohan v. Commissioner, supra.We allow petitioner 20 percent of the total telephone expenses and 20 percent of the depreciation claimed for the telephone. We also allow her the claimed $ 5 depreciation for the typewriter, which petitioner used to write letters to promote her work. Petitioner purchased $ 5,970 of materials and paid various individuals $ 2,304 to help her lift, load, mix, and prepare the materials for her art. Petitioner also spent $ 74 on advertising, $ 176 for dues and publications, $ 12 for freight, $ 98 for office expense, and $ 1,023 for photographs. These are ordinary and necessary business expenses of an artist, and we find them deductible under section 162. Petitioner did not prove that she is entitled to deduct $ 50 for interest and $ 125 for repairs. Petitioner also deducted $ 189 for gifts, $ 20 for a credit card fee, and $ 305 for taxis. Petitioner has not met the substantiation requirements with respect to gifts. Sec. 274(d). As to the credit card and taxi expenses, we find that a portion of each was business related and allow petitioner deductions of $ 10 and $ 150, *261 respectively. Cohan v. Commissioner, supra.
Petitioner deducted $ 1,629 for entertainment expenses, approximately $ 450 of which was attributable to studio/apartment entertainment of museum or gallery representatives or prospective purchasers. Petitioner has not presented evidence to show that these expenses were directly related to her business, nor has she shown the dates, times, or other requirements under section 274. Therefore, the deduction for entertainment expenses is disallowed. Sec. 1.274-5, Income Tax Regs.
Petitioner deducted $ 6,169 as fees for services rendered to her by her accountant over 8 years. Petitioner has not shown the reasons for which the fees were charged. Nor has petitioner explained why the fees were accrued over an 8-year period, even though petitioner had sufficient resources to pay such fees in any of the earlier years in which the fees allegedly were incurred. In 1984, Mr. Ploss prepared petitioner's 1983 Federal income tax return. Accordingly, we will allow a deduction of $ 900 for these services. Sec. 212(3). Otherwise, respondent's determination on this issue is sustained. Investment Tax Credit
Sections 38 *262 and 46 allow a tax credit for investment in certain depreciable property. Petitioner claimed $ 427 in tentative investment credit for the computer, furniture, humidifier, and telephone, and claimed $ 750 of tentative investment credit for the Volvo. Petitioner did not use any of these credits. We have disallowed in their entirety deductions relating to the computer, the furniture, and the humidifier, and likewise must disallow any claim for investment credit with respect to these items. As to the Volvo and telephone, petitioner's claim for investment credit is allowed only to the extent that we have determined a business-use percentage. Late Filing Addition
Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date, determined with regard to any extension of time for filing previously granted, unless such failure was due to reasonable cause and not willful neglect. The addition is 5 percent of the amount of tax required to be shown on the return, with 5 percent added for each additional month that the return is late, not to exceed 25 percent in total. Because respondent raised the issue in her answer in this case, *263 respondent bears the burden of proof that this addition to tax applies. Rule 142(a). Section 6081 provides that an extension may be granted for the filing of a return. However, the extension granted cannot exceed 6 months, with a nonrelevant exception. Sec. 6081(a). Petitioner's return was dated June 2, 1986, almost 8 months after any authorized extension would have expired. Therefore, respondent is sustained on this issue. Negligence Additions
Section 6653(a)(1) provides for an addition to tax in the amount of 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) provides for a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Reasonable and good faith reliance by a taxpayer on an accountant or attorney may be sufficient to avoid the addition to tax for negligence. United States v. Boyle, 469 U.S. 241, 251 (1985). Petitioner relied totally on Mr. Ploss, a certified public accountant experienced in *264 tax matters, to prepare her income tax return. She reasonably relied on his advice, and we find that she is not liable for the additions to tax under section 6653(a)(1) and (2). Woody v. Commissioner, 19 T.C. 350 (1952). Decision will be entered under Rule 155. Footnotes
1. percent of the interest due on the underpayment of $ 2,825 attributable to negligence.↩
1. For convenience, all numbers have been rounded to the nearest dollar amount.↩