T.C. Memo. 2007-150

UNITED STATES TAX COURT

STEVEN S. AND LISA J. BOGUE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24754-05.               Filed June 14, 2007.

Steven S. and Lisa J. Bogue, pro sese.

<u>Blaine Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $3,442 deficiency in petitioners' Federal income tax for 2003.  After concessions,[1] we are asked to decide two issues.  First, we are asked to decide whether petitioner Steven S. Bogue (Mr. Bogue) was away from home when he worked as an airline mechanic for Northwest Airlines

_____

[1]See <u>infra</u> note 2 for the concessions each party made.

(NWA) in Detroit, Washington, New York, and Milwaukee to determine whether petitioners are entitled to deduct expenses for his vehicle, meals, and lodging while Mr. Bogue was away from Farmington, Minnesota, in the Minneapolis area where he normally lived. We conclude that he was not away from home. Second, we are asked to decide whether petitioners substantiated various other expenses. We conclude that petitioners have substantiated and are entitled to deduct some of these other expenses.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Farmington, Minnesota, at the time they filed the petition.

Mr. Bogue's Employment With Northwest Airlines

Mr. Bogue started as a mechanic with the U.S. Navy in 1981. He enjoyed working on planes and enrolled in an airframe and power plant school in Wyoming in 1992 to obtain the education necessary to be licensed as an airline mechanic by the FAA. After working for B.F. Goodrich for a short time, Mr. Bogue accepted a position with NWA in Minneapolis in 1996. Mr. Bogue characterized the NWA job as his "dream job" because he could work in the Midwest, where he had grown up. Mr. Bogue worked in Minneapolis for most of his career with NWA.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the

notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an employee had worked for NWA, regardless of where the airline facility was located. An employee with higher seniority could bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump. Most employees exercised their seniority in the way that would give them positions in cities as close as possible to their families.

Mr. Bogue worked in Minneapolis until mid-April 2003, when he received a bump notice. Mr. Bogue chose to exercise his seniority and bump another employee rather than accept the layoff. Bumping another employee meant he could stay an NWA employee and could retain his health benefits. This was important to Mr. Bogue because his wife, petitioner Lisa J. Bogue (Mrs. Bogue), and young child relied on these benefits. Mr. Bogue first exercised his seniority to take a position in Detroit, Michigan, where he worked from April 16 until April 27, 2003. He was then bumped again and took a position in Washington, D.C., on April 28, 2003. He worked in the

Washington, D.C., area first at Ronald Reagan Washington National Airport until May 8, 2003, and then at Dulles International Airport until May 15, 2003. Mr. Bogue then exercised his seniority to take a position in the New York, New York, area. He worked at LaGuardia International Airport from May 16 until June 18, 2003, and John F. Kennedy International Airport from June 19 until July 3, 2003. Mr. Bogue was then bumped again and took a position in Milwaukee, Wisconsin, where he worked from July 4 until August 18, 2003. Mr. Bogue was laid off on August 18, 2003. There was no one more junior for Mr. Bogue to bump at the time.

After Mr. Bogue was laid off on August 18, 2003, he unsuccessfully searched for work in Minneapolis. He was recalled to an NWA position in Milwaukee, Wisconsin, on November 3, 2003. He worked for NWA in Milwaukee until early 2004.

Mr. Bogue's positions in Detroit, Washington, New York, and Milwaukee had no specific end date. After Mr. Bogue was laid off from his position in Minneapolis, no NWA position was available for him to return to in Minneapolis. He was forced to bump other employees and work in different cities to stay with NWA. Mr. Bogue expected to return to Minneapolis as soon as there was an NWA job available in Minneapolis that he had enough seniority to obtain. The timing of a return to Minneapolis depended on NWA's needs for mechanics in that city as well as the choices of other

mechanics also subject to the seniority system.

Mrs. Bogue, who was expecting the family's second child in 2003, and petitioners' young child remained in Farmington, Minnesota, at the family residence while Mr. Bogue worked in Detroit, Washington, New York, and Milwaukee. Mr. Bogue could commute via air travel to Detroit and LaGuardia Airport in New York and could occasionally drive to and from Milwaukee. He rented an apartment with other NWA mechanics in Milwaukee, stayed in a friend's trailer for part of the time he worked in New York, and stayed in hotels occasionally as well.

Mr. Bogue had a cellular phone, and petitioners had America Online (AOL) Internet service at their Minnesota residence during 2003. Mr. Bogue claimed he purchased safety shoes and safety glasses during 2003.

Mr. Bogue wore a uniform while he worked for NWA. His uniform would get covered in debris and chemicals as he worked, and he needed to clean the uniform frequently.

Petitioners claimed they contributed some items to charity and made cash contributions in 2003.

Petitioners' Return

Petitioners claimed certain expenses on Schedule A, Itemized Deductions, on the joint return for 2003. Respondent examined the return and issued petitioners a deficiency notice in which he disallowed many of the expenses. Of the expenses still in

dispute,[2] petitioners assert they are entitled to deduct claimed cash and noncash charitable contributions as well as unreimbursed employee business expenses. The unreimbursed employee business expenses petitioners claimed include expenses for Mr. Bogue's vehicle, lodging, and meals while in Detroit, Washington, New York, and Milwaukee as well as expenses for Internet access, safety glasses and safety shoes, uniform cleaning, and cellular telephone.

Petitioners timely filed a petition.

OPINION

The parties resolved many of the disputed expenses before trial. We are asked to determine whether petitioners are entitled to deduct the remaining expenses. We begin by considering whether Mr. Bogue was away from home when he incurred expenses for his vehicle, lodging, and meals in Detroit, Washington, New York, and Milwaukee.

---

[2]Respondent concedes that petitioners are entitled to deduct a portion of medical and dental expenses, State and local income taxes, real estate taxes, a portion of personal property taxes, home mortgage interest, a portion of points, tax preparation fees, job search expenses, job search mileage, a portion of maintenance of uniforms expenses, and union dues. Petitioners concede that they are not entitled to deduct miscellaneous expenses, miscellaneous office supplies, certain amounts for tools, professional publications, financial publications, and miscellaneous investment expenses, as well as portions of medical and dental expenses, personal property taxes, points, and certain amounts for uniforms.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as vehicle expenses, meals, and lodging incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a).[3] A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The duplicate costs are not deductible where the taxpayer maintains two homes for personal reasons. Sec. 262; Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while away from home. Sec. 162(a)(2). The word "home" for purposes of section 162(a)(2) has a special meaning. It generally refers to

[3]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

the area of a taxpayer's principal place of employment, not the taxpayer's personal residence.  Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary.  Id.; Mitchell v. Commissioner, T.C. Memo. 1999-283.  On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite.  Kroll v. Commissioner, supra at 562.

It is presumed that a taxpayer will generally choose to live near his or her place of employment.  Frederick v. United States, 603 F.2d 1292, 1295 (8th Cir. 1979).  A taxpayer must, however, have a principal place of employment and accept temporary work in another location to be away from home.  Kroll v. Commissioner, supra.  A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away.  Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; Edwards v. Commissioner, T.C. Memo. 1987-396.

All the facts and circumstances are considered in

determining whether a taxpayer has a tax home. See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home). The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home. Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971). Where a taxpayer has no business connections with the area of primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere. See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra. In that situation, the expenses incurred while temporarily away from that residence are not deductible. Hantzis v. Commissioner, supra; Bochner v. Commissioner, supra; Tucker v. Commissioner, supra; see McNeill v. Commissioner, T.C. Memo. 2003-65; Aldea v. Commissioner, T.C. Memo. 2000-136.

Once Mr. Bogue was bumped from Minneapolis, he had no job to return to there. His choices were to be laid off and have no work, or to bump other employees and move to different cities to continue working. NWA gave Mr. Bogue no end date for his

positions in Detroit, Washington, New York, and Milwaukee. NWA no longer required Mr. Bogue to perform any services whatsoever in the Minneapolis area once he was bumped. Mr. Bogue introduced evidence that he searched for work in the Minneapolis area but was unsuccessful. Although Mrs. Bogue and the family remained in the family residence with occasional visits from Mr. Bogue while Mr. Bogue worked in Detroit, Washington, New York, and Milwaukee, this fact alone does not dictate that Mr. Bogue's tax home was in Farmington, Minnesota, where the family residence was located. Unlike traveling salespersons who may be required to return to the home city occasionally between business trips, Mr. Bogue's business ties to the Minneapolis area ceased when he was bumped.

The Court understands that the NWA mechanics' lives were unsettled and disrupted. Mechanics did not know how long they would have a job in one specific location. They only knew the system was based on seniority. They could bump less senior employees, and they could be bumped by more senior employees. While we acknowledge that Mr. Bogue would have liked to return to the Minneapolis area to work for NWA, Mr. Bogue did not know when such a return would be possible due to the seniority system. The likelihood of Mr. Bogue's return to a position in Minneapolis depended on NWA's needs for mechanics there as well as the choices of more senior mechanics. Mr. Bogue did not know how long he would be in Detroit, Washington, New York, or Milwaukee,

or where he might go next.  It was not foreseeable that he would be able to return to Minneapolis at any time due to the seniority system.  Thus, we conclude there was no business reason for petitioners to maintain a home in the Minneapolis area. Petitioners kept the family residence in the Minneapolis area for purely personal reasons.  Petitioners have failed to prove that Mr. Bogue had a tax home in 2003.  Accordingly, Mr. Bogue was not away from home in Detroit, Washington, New York, and Milwaukee, and the expenses he incurred while there are not deductible.

Substantiation of Expenses

We next turn to the substantiation issues to determine whether petitioners are entitled to deduct any remaining expenses.  We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous.[4]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed.  Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v.

---

[4]Petitioners do not claim the burden of proof shifted to respondent under sec. 7491(a).  Petitioners also did not establish they satisfy the requirements of sec. 7491(a)(2).  We therefore find that the burden of proof remains with petitioners.

Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.
This includes the burden of substantiation. Hradesky v.
Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d
821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions
by maintaining the records necessary to establish he or she is
entitled to the deductions. Sec. 6001; Hradesky v. Commissioner,
supra. The taxpayer shall keep such permanent records or books
of account as are sufficient to establish the amounts of
deductions claimed on the return. Sec. 6001; sec. 1.6001-1(a),
(e), Income Tax Regs. The Court need not accept a taxpayer's
self-serving testimony when the taxpayer fails to present
corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-
304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)),
affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

Unreimbursed Employee Business Expenses

We shall now consider whether petitioners are entitled to
deduct the claimed expenses, beginning with the unreimbursed
employee business expenses petitioners claimed on Schedule A.

In general, all ordinary and necessary expenses paid or
incurred in carrying on a trade or business during the taxable
year are deductible, but personal, living, or family expenses are
not deductible. Secs. 162(a), 262. Services performed by an
employee constitute a trade or business. O'Malley v.

Commissioner, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). For such expenses, only certain types of documentary evidence ordinarily will suffice.

Internet Access Expenses

We now examine those expenses not subject to the strict substantiation requirements. Petitioners claimed $160 for Internet access expenses during 2003. We have characterized Internet expenses as utility expenses. Verma v. Commissioner,

T.C. Memo. 2001-132.  Strict substantiation therefore does not apply, and we may estimate the business portion of utility expenses under the Cohan rule.  See Pistoresi v. Commissioner, T.C. Memo. 1999-39.

Petitioners introduced copies of credit card statements indicating that AOL charged petitioners $23.90 per month in 2003. Petitioners failed to introduce evidence to show that Mr. Bogue's employer, NWA, required him to have Internet access or that he used the Internet for his work at NWA.[5]  Petitioners are therefore not entitled to deduct any Internet access expenses as employee business expenses for 2003.

Safety Glasses and Safety Shoes Expenses

Petitioners claimed $150 for safety glasses and $124 for safety shoes for 2003.  A taxpayer is entitled to deduct unreimbursed employee expenses only to the extent that the taxpayer demonstrates that he or she could not have been reimbursed for such expenses by his or her employer.  Sec. 162(a); Podems v. Commissioner, 24 T.C. 21, 23 (1955).

Petitioners did not provide any documentation showing that Mr. Bogue purchased safety glasses or safety shoes in 2003.

---

[5]Mr. Bogue stated at trial that he used the Internet for job searching during 2003.  Petitioners did not offer any evidence or estimate to break down the cost attributable to job searching or how much was for personal use, and we decline to speculate.  We also note that respondent has conceded that petitioners are entitled to deduct $75 for job searching expenses.

Moreover, the parties introduced the NWA airline mechanics' union contract (union contract), which contradicts petitioners' claimed deductions for safety glasses and safety shoes expenses.  The union contract indicates that NWA provided its mechanics with safety glasses and safety shoes.  Alternatively, NWA would reimburse employees up to $90 for each of the safety glasses and the safety shoes if the employee chose to buy his or her own.  Thus, even if petitioners had shown that Mr. Bogue purchased safety glasses and safety shoes in 2003, petitioners have failed to demonstrate that NWA did not reimburse Mr. Bogue for the costs of these items.  See Podems v. Commissioner, supra at 23.  Petitioners are therefore not entitled to deduct the costs of safety glasses or safety shoes as employee business expenses for 2003.

Cleaning Expenses for Uniforms

Petitioners claimed $822 for cleaning expenses for Mr. Bogue's NWA uniforms.  Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing.  Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Beckey v. Commissioner, T.C. Memo. 1994-514.

We are satisfied that petitioners incurred deductible expenses for uniform cleaning.  Mr. Bogue gave unclear testimony,

however, regarding how he calculated the $822 for cleaning costs. Mr. Bogue introduced a document on the letterhead of his CPA that also purports to indicate how the sum was calculated, but it suggests an excessive amount, 22 loads of laundry per month, roughly corresponding to the number of days Mr. Bogue worked each month.

We may estimate the amount of deductible cleaning expenses under the Cohan rule. Mr. Bogue testified that he paid $2 to $4 for each cycle and that he did two loads of laundry per week. We find that Mr. Bogue did approximately eight loads of laundry per month at $2 for each wash cycle and $2 for each dry cycle. Petitioners are therefore entitled to deduct $304 of uniform cleaning expenses in 2003.

Cellular Phone Expenses

Petitioners claimed $240 of cellular phone expenses for 2003. Cellular phones are included in the definition of "listed property" for purposes of section 274(d)(4) and are thus subject to the strict substantiation requirements. Sec. 280F(d)(4)(A)(v); Gaylord v. Commissioner, T.C. Memo. 2003-273. A taxpayer must establish the amount of business use and the amount of total use for the property to substantiate the amount of expenses for listed property. Nitschke v. Commissioner, T.C. Memo. 2000-230; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Expenses subject to

strict substantiation may not be estimated under the <u>Cohan</u> rule. <u>Sanford v. Commissioner</u>, 50 T.C. at 827.

Mr. Bogue did not prove that NWA required him to have a cellular phone.  Mr. Bogue also did not offer any evidence indicating how much he used his cellular phone for business use and how much for personal use.  Mr. Bogue failed to establish that he incurred any expenses to use his cellular phone for business purposes in addition to those he would have incurred had he used it only for personal purposes.  Petitioners are therefore not entitled to deduct any cellular phone expenses for 2003.

Charitable Contributions

We finally consider petitioners' charitable contributions. Petitioners claimed they contributed $111 cash and property worth $200 to charitable organizations in 2003.  Charitable contributions a taxpayer makes are generally deductible under section 170(a).  No deduction is allowed, however, for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by a qualified donee organization.[6]  Sec.

---

[6]There are now stricter requirements for contributions of money.  Sec. 170(f)(17).  No deduction for a contribution of money in any amount is allowed unless the donor maintains a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution.  <u>Id.</u>  This new provision is effective for contributions made in tax years beginning after Aug. 17, 2006.  Pension Protection Act of 2006, Pub. L. 109-280, sec.

(continued...)

170(f)(8)(A).  The deduction for a contribution of property equals the fair market value of the property on the date contributed.  Sec. 1.170A-1(c)(1), Income Tax Regs.

A taxpayer claiming a charitable contribution is generally required to maintain for each contribution a canceled check, a receipt from the donee charitable organization showing the name of the organization and the date and amount of the contribution, or other reliable written records showing the name of the donee and the date and amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.

We first consider petitioners' cash contributions. Petitioners claimed they donated $111 to Family of Christ Church in Lakeville, Minnesota, during 2003.  Mr. Bogue provided the name and address of the church and the dates and amounts he or his wife contributed in a document he prepared himself when he prepared their tax returns.  Petitioners offered no receipts or acknowledgments from the church.  Mr. Bogue testified that he and his wife were searching for a church and they periodically attended the Family of Christ Church during 2003, but were not members or parishioners.  Petitioners' document indicates that Mr. Bogue or Mrs. Bogue or both attended the church 17 times during the year and contributed between $5 and $20 at each

---

[6](...continued)
1217, 120 Stat. 1080.

service.  We are convinced that petitioners attended the church and donated money, and we find the amounts that petitioners claimed to be credible.  We conclude that petitioners are entitled to deduct $111 of cash charitable contributions.

We next turn to petitioners' contributions of property. Petitioners introduced four Goodwill donation receipts to support their claimed deduction.  The receipts do not list the specific items petitioners contributed and simply note that petitioners donated a certain number of bags.  Petitioners also introduced a document that purports to list and value more specifically the items petitioners contributed.  This document indicates that petitioners placed a value of $215 on the property they donated. Petitioners did not introduce any evidence supporting their estimated value or regarding the quality of the donated items.

While we are convinced that petitioners donated property to charity in 2003, petitioners have failed to provide any reliable evidence of the items they donated or their estimated values. Petitioners are therefore not entitled to deduct any amount for charitable contributions of property.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under Rule 155.