T.C. Memo. 2007-151

UNITED STATES TAX COURT

CHRISTOPHER D. AND KRISTIE M. FARRAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20434-05.          Filed June 14, 2007.

Christopher D. and Kristie M. Farran, pro sese.

<u>Melissa J. Hedtke</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $2,206 deficiency in
petitioners' Federal income tax for 2003.  After concessions,[1] we
are asked to decide two issues.  First, we are asked to decide
whether petitioner Christopher Farran (Mr. Farran) was away from
home when he worked as an airline mechanic for Northwest Airlines

_____

[1]See <u>infra</u> note 2 for the concessions each party made.

(NWA) in Detroit, Chicago, and Boston to determine whether petitioners are entitled to deduct expenses for his vehicle, meals, and lodging while Mr. Farran was away from Farmington, Minnesota, in the Minneapolis area where he normally lived. We conclude that he was not away from home. Second, we are asked to decide whether petitioners substantiated various other expenses. We conclude that petitioners have substantiated and are entitled to deduct some of these other expenses.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Dallas, Georgia, at the time they filed the petition.

### Mr. Farran's Employment With NWA

Mr. Farran was an airline mechanic for NWA beginning in 1998 and continuing through 2003. Mr. Farran worked in Minneapolis until 2001.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an employee worked for NWA regardless of where the airline facility was located. An employee with higher seniority could bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or

find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump. Most employees exercised their seniority in the way that would give them positions in cities as close as possible to their families.

Mr. Farran first received a bump notice in late 2001. Mr. Farran chose to exercise his seniority and bump another employee rather than accept the layoff. Mr. Farran was able to bump to a position in the relatively close location of Duluth, but was then bumped again to Detroit, where he started in November 2001. Mr. Farran worked in Detroit until February 3, 2003, and then was bumped again, this time exercising his seniority to take a position in Chicago. Mr. Farran worked for NWA in Chicago from February 4 through February 25, 2003. Mr. Farran was then bumped a final time and exercised his seniority to take a position in Boston, where he worked from February 26 through March 21, 2003. Mr. Farran ceased working for NWA on March 22, 2003.

Mr. Farran was unemployed after he left NWA until November 17, 2003. Mr. Farran searched for a job during those months and took courses at Dakota County Technical College, including courses in hydraulics, industrial electronics, and motor controls. These courses expanded Mr. Farran's skills as an

airline mechanic and built on the knowledge Mr. Farran already had.  Mr. Farran received a certificate or some other type of credential for completing the program.  Mr. Farran drove back and forth from petitioners' home in Farmington, Minnesota, to the college on the days his classes met.

Mr. Farran ultimately accepted a position with Gulfstream Aerospace in Atlanta, Georgia, starting November 17, 2003.  Mr. Farran worked for Gulfstream Aerospace until July 2004.

Mr. Farran's positions in Detroit, Chicago, and Boston had no specific end dates.  The timing of a return to the Minneapolis area would depend on NWA's needs for mechanics in that city as well as the choices of other mechanics also subject to the seniority system.

Mr. Farran's family stayed in Minnesota at the family residence while Mr. Farran was working for NWA in Detroit, Chicago, and Boston, and Mr. Farran returned periodically to visit them.  While Mr. Farran was working in Detroit, Chicago, and Boston, he found that hotels were quite expensive and determined it would be impossible to get an apartment.  He decided it would be impractical to move his family to these locations and mostly lived in his car.  Mr. Farran kept a calendar for 2003 in Minnesota on which he and his wife periodically noted amounts Mr. Farran incurred for hotels, mileage, and food.

Petitioners maintained Internet access at the Minnesota residence for the whole year. Mr. Farran used the Internet when he was in Minnesota to search for a job and to monitor investments, but no other family member used it. Mr. Farran also incurred some other costs, such as for resume paper, in his job search. Mr. Farran also had a cellular phone during 2003 that he acknowledged using for personal calls. Mr. Farran's family moved to Georgia at a date not evident in the record and lived in Georgia at the time of trial.

Mr. Farran used some of his own tools in his work for NWA. Mr. Farran also wore a uniform while he worked for NWA. He generally wore one shirt per day and cleaned his clothing in a washing machine. Mr. Farran estimated that he worked approximately 22 days per month for NWA.

Petitioner Kristie Farran (Mrs. Farran) was a substitute teacher during 2003. Mr. and Mrs. Farran donated a 1989 Pontiac Sunbird with a Kelley Blue Book value of $1,750 to Volunteers of America, Inc. in April 2003. Volunteers of America later sold this vehicle in "as is" condition for $40. Mr. and Mrs. Farran contributed some items to Goodwill and also bought items for their children's school during 2003.

Petitioners' Return

Petitioners claimed certain expenses on Schedule A, Itemized Deductions, on the return for 2003. Respondent examined the

return and issued petitioners a deficiency notice in which he disallowed many of the expenses. Of the expenses still in dispute,[2] petitioners assert they are entitled to claimed noncash charitable contributions as well as unreimbursed employee business expenses. The unreimbursed employee business expenses petitioners claimed include expenses for Mr. Farran's vehicle, lodging, and meals while in Detroit, Chicago, and Boston as well as expenses for Internet access, uniform cleaning, tools, depreciation of tools, personal property taxes, job searching, supplies, parking, publications, cellular telephone, and education mileage.

Petitioners timely filed a petition.

OPINION

The parties resolved many of the disputed expenses before trial. We are asked to determine whether petitioners are entitled to deduct the remaining expenses. We begin by considering whether Mr. Farran was away from home when he incurred expenses for his vehicle, meals, and lodging in Detroit, Chicago, and Boston.

---

[2]Respondent concedes that petitioners are entitled to deduct State and local taxes, real estate taxes, a portion of personal property taxes, home mortgage interest, tax preparation fees, a portion of job search expenses including job search mileage expenses, job union mileage expenses, certain amounts for tools, and union dues. Petitioners concede that they are not entitled to deduct cash contributions to charity and a portion of uniform cleaning expenses.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as vehicle expenses, meals, and lodging incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a).[3] A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The duplicate costs are not deductible where the taxpayer maintains two homes for personal reasons. Sec. 262; Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while away from home. Sec. 162(a)(2). The word "home" for purposes of

_____

[3]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

section 162(a)(2) has a special meaning. It generally refers to the area of a taxpayer's principal place of employment, not the taxpayer's personal residence. <u>Daly v. Commissioner</u>, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); <u>Kroll v. Commissioner</u>, <u>supra</u> at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment. <u>Peurifoy v. Commissioner</u>, 358 U.S. 59, 60 (1958). The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary. <u>Id.</u>; <u>Mitchell v. Commissioner</u>, T.C. Memo. 1999-283. On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite. <u>Kroll v. Commissioner</u>, <u>supra</u> at 562.

It is presumed that a taxpayer will generally choose to live near his or her place of employment. <u>Frederick v. United States</u>, 603 F.2d 1292, 1295 (8th Cir. 1979). A taxpayer must, however, have a principal place of employment and accept temporary work in another location to be away from home. <u>Kroll v. Commissioner</u>, <u>supra</u>. A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away. <u>Deamer v. Commissioner</u>, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; <u>Edwards v. Commissioner</u>, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home. See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home). The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home. Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971). Where a taxpayer has no business connections with the area of primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere. See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra. In that situation, the expenses incurred while temporarily away from that residence are not deductible. Hantzis v. Commissioner, supra; Bochner v. Commissioner, supra; Tucker v. Commissioner, supra; see McNeill v. Commissioner, T.C. Memo. 2003-65; Aldea v. Commmissioner, T.C. Memo. 2000-136.

Once Mr. Farran was bumped from Minneapolis, he had no job to return to there. His choices were to be laid off and have no work, or to bump other employees and move to different cities to

continue working.  NWA gave Mr. Farran no end date for his positions in Detroit, Chicago, and Boston.  NWA no longer required Mr. Farran to perform any services whatsoever in the Minneapolis area once he was bumped.  Mr. Farran searched for work in the Minneapolis area and took classes to further his education, but was unsuccessful in finding a position in the Minneapolis area.  In fact, he ultimately accepted a position in Dallas, Georgia.  Although Mrs. Farran and the family remained in the family residence with occasional visits from Mr. Farran while Mr. Farran worked in Detroit, Chicago, and Boston, this fact alone does not dictate that Mr. Farran's tax home was in Farmington, Minnesota, where the family residence was located.  Unlike traveling salespersons who may be required to return to the home city occasionally between business trips, Mr. Farran's business ties to Minneapolis ceased when he was bumped.

The Court understands that the NWA mechanics' lives were unsettled and disrupted.  Mechanics did not know how long they would have a job in once specific location.  They only knew the system was based on seniority.  They could bump less senior employees, and they could be bumped by more senior employees. While we acknowledge that Mr. Farran would have liked to return to the Minneapolis area to work for NWA, Mr. Farran did not know when such a return would be possible due to the seniority system. The likelihood of Mr. Farran's return to a position in

Minneapolis depended on NWA's needs for mechanics there as well as the choices of more senior mechanics. Mr. Farran did not know how long he would be in Detroit, Chicago, or Boston or where he might go next. It was not foreseeable that he would be able to return to Minneapolis at any time due to the seniority system. Thus, we conclude there was no business reason for petitioners to maintain a home in the Minneapolis area. Petitioners kept the family residence in the Minneapolis area for purely personal reasons. Petitioners have failed to prove that Mr. Farran had a tax home in 2003. Accordingly, Mr. Farran was not away from home in Detroit,[4] Chicago, and Boston, and the expenses he incurred while there are not deductible.[5]

Substantiation of Expenses

We next turn to the substantiation issues to determine whether petitioners are entitled to deduct any remaining expenses. We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and

---

[4]Even if we had found that Mr. Farran's tax home during 2003 was Farmington, Minnesota, Mr. Farran may not be treated as temporarily away from home while he worked in Detroit because the position lasted over a year. See sec. 162(a).

[5]It is unclear from the record whether petitioners are also claiming travel expenses with respect to Mr. Farran's position with Gulfstream Aerospace in Georgia. Petitioners have introduced no testimony or evidence with regard to Mr. Farran's employment in Georgia, and we must therefore conclude that petitioners have failed to prove that Mr. Farran was away from home when he incurred travel expenses in Georgia.

the taxpayer bears the burden of proving that these determinations are erroneous.[6]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed.  Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.  This includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions.  Sec. 6001; Hradesky v. Commissioner, supra.  The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence.  Beam v. Commissioner, T.C. Memo. 1990-

---

[6]Petitioners do not claim the burden of proof shifts to respondent under sec. 7491(a).  Petitioners also did not establish they satisfy the requirements of sec. 7491(a)(2).  We therefore find that the burden of proof remains with petitioners-

304 (citing <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

<u>Unreimbursed Employee Business Expenses</u>

We shall now consider whether petitioners are entitled to deduct the claimed expenses, beginning with the unreimbursed employee business expenses petitioners claimed on Schedule A.

In general, all ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable year are deductible, but personal, living, or family expenses are not deductible. Secs. 162(a), 262. Services performed by an employee constitute a trade or business. <u>O'Malley v. Commissioner</u>, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930). For the <u>Cohan</u> rule to apply, however, a basis must exist on which this Court can make an approximation. <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). For such expenses, only certain types of documentary evidence will suffice.

Job Search Expenses

We now examine those expenses not subject to the strict substantiation requirements, beginning with job search expenses. Petitioners claimed $156 for job search expenses during 2003.

The parties stipulated that Mr. Farran incurred $119.43 of job search expenses. Petitioners introduced a bank statement, receipts, and two bills to support their claim to the additional amount for job search expenses. Many of the documents petitioners submitted are illegible, however, and do not establish that these amounts were actually incurred in connection with Mr. Farran's job search. We therefore conclude that petitioners are entitled to deduct only the $119.43 of agreed upon job search expenses.

Internet Access Expenses

Petitioners claimed $264 for Internet access expenses during 2003. We have characterized Internet expenses as utility expenses. Verma v. Commissioner, T.C. Memo. 2001-132. Strict substantiation therefore does not apply, and we may estimate the

business portion of utility expenses under the <u>Cohan</u> rule.  See <u>Pistoresi v. Commissioner</u>, T.C. Memo. 1999-39.

The parties stipulated that petitioners paid $219.50 for Microsoft Online Service in 2003.  Mr. Farran testified that he used the Internet during 2003 to search for a new job while he was unemployed and also to monitor his investments.  Mr. Farran also testified that Mrs. Farran and their children did not use the Internet and he did not use it for other personal purposes.

We found Mr. Farran's testimony on this issue credible, and we are convinced that a portion of Mr. Farran's Internet use during the time he was unemployed was to search for a job in his field.  We are permitted to estimate the portion of this expense attributable to job searching under the <u>Cohan</u> rule.  We estimate that 50 percent of Mr. Farran's Internet use during the 7 months he was unemployed in 2003 was to search for a job.  Accordingly, we conclude that petitioners are entitled to deduct $64 of Internet access charges as job search expenses for 2003.

<u>Cleaning Expenses for Uniforms</u>

Petitioners claimed $722 for cleaning expenses for Mr. Farran's NWA uniforms.  Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary

clothing.  <u>Yeomans v. Commissioner</u>, 30 T.C. 757, 767-769 (1958); <u>Beckey v. Commissioner</u>, T.C. Memo. 1994-514.

We are satisfied that petitioners incurred deductible expenses to clean Mr. Farran's uniforms.  Mr. Farran gave unclear testimony, however, regarding how he calculated the cleaning costs.  Petitioners introduced a document on the letterhead of his CPA that purports to indicate how the sum was calculated, but it suggests an excessive amount, 22 cleanings for shirts and pants and 2 for jackets per month.  Mr. Farran estimated he worked 22 days per month and wore one shirt per day.  At trial, Mr. Farran conceded that petitioners are not entitled to deduct cleaning expenses for uniforms for the months he was unemployed.

We may estimate the amount of deductible cleaning expenses under the <u>Cohan</u> rule.  We adopt the unit cost of $1.35 listed on petitioners' exhibit as the cost to wash or dry one load of laundry.  We find that approximately eight loads of laundry for each of the 5 months Mr. Farran worked is a reasonable number to yield 22 clean shirts and pants and 2 jackets per month. Petitioners are therefore entitled to deduct $108 of uniform cleaning expenses in 2003.

## Tool Expenses

Petitioners claimed $831 for tools Mr. Farran used as an airline mechanic, and the parties stipulated that petitioners are entitled to deduct $90.58.  A taxpayer is entitled to deduct

- 17 -

expenses for tools if they are ordinary and necessary business expenses.  Sec. 162(a).

Petitioners have offered no documentation or testimony regarding the $740.42 of tool expenses claimed beyond what respondent allowed.  We conclude that petitioners are not entitled to deduct any additional amount for tools other than the $90.58 agreed upon amount.

Depreciation Expenses

Petitioners claimed $115 for depreciation of tools Mr. Farran used at his job.  The cost of tools with useful lives greater than a year is recoverable by depreciation.  Secs. 167(a), 168(b); Seawright v. Commissioner, 117 T.C. 294, 305 (2001); Clemons v. Commissioner, T.C. Memo. 1979-273.  Mr. Farran testified that he did not have any receipts for the depreciated tools but identified them as sockets and wrenches he thought would last for years.

The only documentary evidence petitioners introduced to support their claimed deduction was a depreciation schedule for the tools that indicates Mr. Farran acquired the tools on January 1, 1998.  Petitioners did not introduce any receipts to show the tools' purchase price or purchase date.

Petitioners have not substantiated that they are entitled to a depreciation deduction.  Further, we are unable to estimate any amount for depreciation under the Cohan rule because the evidence

petitioners introduced is inadequate.  Petitioners are therefore not entitled to deduct any amount for depreciation.

Personal Property Taxes

Petitioners claimed $227 of personal property taxes for 2003, and respondent concedes that petitioners are entitled to deduct $217 of these taxes.  Petitioners have presented no argument or evidence regarding the additional $10 in personal property taxes.  We conclude that petitioners are not entitled to deduct the additional $10 in personal property taxes for 2003.

Supplies

Petitioners claimed $64 for supplies in 2003.  Petitioners introduced several receipts to support their claimed expenses for supplies.  Several of the receipts petitioners introduced, however, appear to be for traveling expenses such as hotels, parking, and tolls, not supplies.  Moreover, the receipts that do not appear to be for traveling expenses are illegible.  Petitioners introduced no testimony to explain what supplies petitioners needed for their jobs and what specific supplies petitioners sought to deduct.  We conclude that petitioners have failed to substantiate their expenses for supplies and are not entitled to deduct any amount for supplies in 2003.

Parking

Petitioners claimed $8 for parking in 2003.  Petitioners submitted a receipt for $5 for parking at Boston Logan

International Airport dated February 25, 2003, to support their deduction for supplies. It is unclear whether they want to also assert that the $5 was part of the $8 claimed for parking. If this amount is for parking, it is unclear whether the amount paid was a nondeductible commuting cost. Without more of an explanation, petitioners are not entitled to deduct any amount for parking expenses in 2003.

Publications

Petitioners claimed $26 for professional publications in 2003. Mr. Farran testified that this amount represented books that he needed for his classes at Dakota County Technical College. Petitioners have introduced no documentation or substantiation of this expense, however. We conclude that petitioners are not entitled to deduct the $26 for professional publications.

Expenses Subject to Strict Substantiation Requirements

We now consider those expenses that are subject to the additional strict substantiation requirements under section 274(d). Expenses subject to strict substantiation may not be estimated under the Cohan rule. Sanford v. Commissioner, 50 T.C. at 827.

Cellular Phone Expenses

Petitioners claimed $372 for cellular phone expenses for 2003. Cellular phones are included in the definition of "listed

property" for purposes of section 274(d)(4) and are thus subject to the strict substantiation requirements. Gaylord v. Commissioner, T.C. Memo. 2003-273. A taxpayer must establish the amount of business use and the amount of total use for the property. Nitschke v. Commissioner, T.C. Memo. 2000-230; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Although the parties stipulated that petitioners paid $324.42 for cellular phone service during 2003, petitioners did not prove that NWA required Mr. Farran to have a cellular phone. Moreover, Mr. Farran also admitted at trial that he used his cellular phone in 2003 to make personal calls as well as for business reasons. Petitioners also did not offer any evidence indicating how much Mr. Farran used his cellular phone in 2003 for business use and how much for personal use. Petitioners failed to establish that they incurred any expenses to use Mr. Farran's cellular phone for business purposes in addition to those they would have incurred had Mr. Farran used it only for personal purposes. Petitioners are therefore not entitled to deduct any cellular phone expenses for 2003.

### Education Mileage

Petitioners claimed $461 of education mileage expenses for 2003. Education expenses are generally deductible as ordinary and necessary business expenses if either of two alternative

conditions are satisfied.  Sec. 1.162-5(a), Income Tax Regs.  The education must either maintain or improve skills the taxpayer needs for his or her trade or business, or the education must meet express requirements set forth by law or regulation or the taxpayer's employer as a condition to the taxpayer's retention of his or her employment.  Id.  Even if the education meets one of these alternatives, there is an exception to the deductibility of education expenses.  Education expenses are not deductible if the education allows the taxpayer to meet the minimum educational requirements for his or her job or to qualify the taxpayer for a new trade or business.  Garwood v. Commissioner, 62 T.C. 699 (1974); sec. 1.162-5(b), Income Tax Regs.

Mr. Farran testified that the $461 petitioners claimed represented mileage expenses incurred when Mr. Farran traveled from his home in Farmington, Minnesota, to his classes at Dakota County Technical College.  Passenger automobiles are listed property under section 280F, and strict substantiation is therefore required.  Sec. 274(d).  No deduction is allowed for any travel expense unless the taxpayer corroborates by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount of the expense, the mileage for each business use of the automobile and the total mileage for all use of the automobile during the taxable period, the date of the business use, and the business purpose for the use.  Sec. 1.274-

5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Adequate records include the maintenance of an account book, diary, log, statement of expense, trip sheets, and/or other documentary evidence, which, in combination, are sufficient to establish each element of expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Taxpayers may use a standard mileage rate established by the Internal Revenue Service in lieu of substantiating the actual amount of the expenditure. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate is generally multiplied by the number of business miles traveled. See Rev. Proc. 2002-61, 2002-2 C.B. 616 (in effect for transportation expenses incurred during 2003). The use of the standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile. Sec. 1.274-5(j)(2), Income Tax Regs. The taxpayer must still establish the actual mileage, the time, and the business purpose of each use. Nicely v. Commissioner, T.C. Memo. 2006-172; sec. 1.274-5(j)(2), Income Tax Regs.

Petitioners introduced a transcript from Dakota County Technical College indicating that Mr. Farran took a variety of courses in 2003, including hydraulics, industrial electronics, and motor controls. Mr. Farran testified that he did not receive a degree from Dakota County Technical College but testified that

he received, essentially, a certificate. Mr. Farran testified that the courses expanded his current skills and built on what he already knew.

Petitioners also introduced a calendar indicating the days during the year that Mr. Farran drove back and forth to Dakota County Technical College. Mr. Farran testified that petitioners computed the deduction by determining the mileage between their home and Dakota County Technical College and then found the corresponding amount of allowable expenses by applying the mileage rate formula for 2003.

We are satisfied that Mr. Farran took courses at Dakota County Technical College to improve his skills as an aircraft mechanic. We are also satisfied that Mr. Farran substantiated the mileage and met the strict substantiation requirements relating to vehicle expenses through petitioners' careful recordkeeping on their calendar. We conclude that petitioners are entitled to deduct $461 for education mileage expenses.

Charitable Contributions

We finally consider petitioners' charitable contributions. Petitioners conceded at trial that they are not entitled to the cash contributions they claimed on their return for 2003. Petitioners claimed they contributed property worth $2,400 to charitable organizations in 2003.

Charitable contributions a taxpayer makes are generally deductible under section 170(a).  No deduction is allowed, however, for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by a qualified donee organization.[7]  Sec. 170(f)(8)(A).  The deduction for a contribution of property equals the fair market value of the property on the date contributed.  Sec. 1.170A-1(c)(1), Income Tax Regs.  The fair market value of property is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts.  Sec. 1.170A-1(c)(2), Income Tax Regs.

A taxpayer claiming a charitable contribution is generally required to maintain for each contribution a canceled check, a receipt from the donee charitable organization showing the name of the organization and the date and amount of the contribution, or other reliable written records showing the name of the donee

---

[7]There are now stricter requirements for contributions of money.  Sec. 170(f)(17).  No deduction for a contribution of money in any amount is allowed unless the donor maintains a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution.  Id.  This new provision is effective for contributions made in tax years beginning after Aug. 17, 2006.  Pension Protection Act of 2006, Pub. L. 109-280, sec. 1217, 120 Stat. 1080.

and the date and amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.

Petitioners claim they contributed property to three charitable organizations in 2003.  We shall address each claimed contribution in turn.  First, petitioners claim they contributed a 1989 Pontiac Sunbird with a value of $1,750 to Volunteers of America, Inc.  Petitioners introduced a donation receipt from Volunteers of America, Inc. signed by a representative of the organization, that substantiates petitioners indeed donated a 1989 Pontiac Sunbird and that petitioners received no goods or services in exchange for the donation.  Petitioners also introduced a page of the Kelley Blue Book for January-April 2003 indicating that the suggested retail for their vehicle was $1,750 at the time they donated it.  Respondent introduced evidence indicating that Volunteers of America, Inc. sold the Pontiac Sunbird less than 2 months after it was donated in "as is" condition for $40.

We have carefully examined the evidence presented on this issue.  We discount the evidence that the charitable organization subsequently sold the vehicle for $40 for several reasons.[8]

_____

[8]If a charity sells the donated vehicle without any significant intervening use or material improvement, the deduction is now limited to the gross proceeds of the sale.  Sec. 170(f)(12).  This provision is effective for charitable contributions made after Dec. 31, 2004.  American Jobs Creation
                                                    (continued...)

First, there is no evidence that the charity's sale of the vehicle was at arm's length.  For example, the charity could have sold the vehicle to a needy person for a small amount to further the charity's charitable goals.  Second, there is no evidence that the vehicle was in the same condition when the charity sold it as when petitioners donated it.  Certain parts of the vehicle may have been sold separately, diminishing its value, or the vehicle may have been in an accident.  On the other hand, the Kelley Blue Book evidence that the vehicle was listed at $1,750 is a reliable indicator of the vehicle's fair market value at the time petitioners donated it.  After carefully considering the evidence each side presented, we conclude that the vehicle was worth $1,750 at the time petitioners donated it, and petitioners have therefore substantiated their charitable contribution of property worth $1,750 to Volunteers of America, Inc.

We next turn to petitioners' claimed contribution of property worth $650 to Goodwill Industries.  Petitioners introduced a Goodwill/Easter Seals document indicating that they donated household, clothing, and other items on October 19, 2003, and that petitioners received no goods or services in exchange. The receipt does not list the specific items petitioners contributed.  Mr. Farran testified that he added the $650 value

_____

[8](...continued)
Act of 2004, Pub. L. 108-357, sec. 884, 118 Stat. 1632.

to the receipt himself.  Petitioners did not introduce any evidence indicating the specific items petitioners contributed, the estimated value of the items, or the quality of the items.

While we are convinced that petitioners donated some items to Goodwill in 2003, petitioners have failed to provide any evidence of the items they donated or their estimated values. Petitioners are therefore not entitled to deduct any amount for contributions of property to Goodwill Industries in 2003.

Finally, petitioners claim they donated some property to their childrens' school in 2003.  Petitioners' tax return for 2003 does not indicate what amount petitioners deducted for property they donated to their childrens' school.  Petitioners submitted various receipts indicating the purchase of items such as ice cream, Baggies, and peanut butter.  Mr. Farran testified that the donations were made for items used at least partly by petitioners' children, such as ice cream for their daughter's school birthday celebration.  These amounts are nondeductible personal expenditures.  Further, petitioners have failed to substantiate adequately these claimed donations.  Petitioners introduced a letter from the elementary school indicating that petitioners donated some items to their children's classrooms. Dollar values of the items donated are not provided in the letter, and the letter is dated September 2006, not contemporaneously with the contributions.  Moreover, the other

records petitioners submitted consist primarily of illegible receipts for personal items.  The proof petitioners provided is not sufficient to support petitioners' claimed deduction for contributions to their children's school.  We conclude that petitioners are not entitled to deduct any amount for contributions of property to the school.

To reflect the foregoing and the concessions of the parties,

Decision will be entered
under Rule 155.